**IT IS SO ORDERED.**

**SIGNED THIS: August 20, 2026**

**Mary P. Gorman**
**United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | | |
|---|---|---|---|
| In re: | DAVID CHOATE HUGHES II, | Case No. | 25-70566 |
| | Debtor. | Chapter 7 | |

**ORDER**

A hearing having been held August 18, 2026, on the following matter:

1) Trustee's Amended Objection to Claim No. 19-1 Filed By Jennifer Dowd (#404)

IT IS ORDERED THAT:

| Matter | Action |
|---|---|
| 1. | For the reasons set forth on the record and set forth herein, the Trustee's Amended Objection to Claim No. 19-1 Filed By Jennifer Dowd (#404) ("Objection to Claim") is allowed. Jennifer Dowd's claim (No. 19-1) is disallowed. |

David Choate Hughes II ("Debtor") filed a voluntary petition under Chapter 11 on July 10, 2025. The case was converted to Chapter 7 on February 10, 2026. Robert E. Eggmann was appointed as the Chapter 7 Trustee. Trustee Eggmann acted quickly to list and sell the Debtor's residence. He sold the residence on Pat Tillman Drive

in Springfield, Illinois, on April 24, 2026, for a gross price of $726,000, netting $306,286.45 for the bankruptcy estate after the payment of the mortgage and closing costs. (See Report of Sale #328.) The Debtor was paid his homestead exemption of $15,000 from the net proceeds.

On May 11, 2026, the Debtor filed a motion seeking to compel Trustee Eggmann to disburse $9100 to his former spouse, Jennifer Dowd, for a child support arrearage. The motion also sought to compel Trustee Eggmann to begin making the Debtor's ongoing monthly child support payments to Ms. Dowd. Attached to the motion was a copy of a court order entered April 28, 2026, by the Circuit Court of Sangamon County, Illinois, which purported to order the $9100 payment to be made from the house sale proceeds and purported to require the Trustee to make ongoing support payments. The order also required this Court to escrow funds for 16 months of future support payments.

Trustee Eggmann responded to the Debtor's motion by filing a detailed explanation of the problems with the motion and the state-court order attached to it. He raised jurisdictional issues and the substantive issue of when a domestic support obligation may be paid from estate funds. He specifically referenced the provisions of §502(b)(5) that limit the allowance of claims for support to only those that have matured before a bankruptcy filing. 11 U.S.C. §502(b)(5). Shortly after the Trustee's response was filed, the Debtor withdrew his motion.

Notwithstanding Trustee Eggmann's clear explanation of why the Debtor would not be able to get his child support obligations paid from the house sale proceeds, it seems that the Debtor and Ms. Dowd appeared in front of the same state court judge on June 8, 2026, and obtained, by stipulation, a second court order which "expressly authorizes and directs the bankruptcy trustee to disburse the child support funds of $20,300" to Ms. Dowd. Ms. Dowd filed a claim for $20,300 in this case on June 18, 2026, with a copy of the June 8 order attached.

Trustee Eggmann objected to Ms. Dowd's claim, filing an initial objection and then the amended objection now before the Court along with a memorandum of law again thoroughly explaining why the Debtor's child support obligations as evidenced by the April 28 and June 8 court orders cannot be paid from the assets of this estate. Ms. Dowd responded, urging this Court to allow her claim. At the hearing on August 18, 2026, both parties appeared and relied on their written submissions. The Debtor also appeared. This

Court explained why Ms. Dowd's claim must be disallowed. There are numerous reasons why the state-court orders are void as to this Court and the Trustee. The Court's findings are summarized below.

The state court lacked subject matter jurisdiction to enter orders directing this Court and Trustee Eggmann on how to administer the property of the Debtor's bankruptcy estate and the claim of Ms. Dowd. Federal district courts have original and exclusive jurisdiction of all bankruptcy proceedings. 28 U.S.C. §1334(a). This exclusive jurisdiction extends to all property of a debtor upon the commencement of a case. 28 U.S.C. §1334(e)(1). In Central Illinois, the district court's exclusive jurisdiction has been referred to the bankruptcy judges. CDIL Civil LR 40.2(A); *see also* 28 U.S.C. §157(a). Thus, this Court has exclusive jurisdiction over the Debtor's property in this case and only this Court has subject matter jurisdiction to authorize or direct the disposition of property of this estate. The state court had no subject matter jurisdiction to enter orders directing the disposition of proceeds from the sale of the Debtor's home by the Trustee.

The state court also lacked personal jurisdiction over Trustee Eggmann. Trustee Eggmann is not a party to the Debtor's family law state-court case and was never served with any process bringing him into that case. Further, he was never given any notice of the proceedings and the intent of either the Debtor or Ms. Dowd to seek an order compelling him to perform his trustee duties under the direction of the state court rather than this Court.

Federal courts generally give full faith and credit to state-court orders. The exception to that rule occurs, however, when as here, the state court lacked both subject matter and personal jurisdiction to enter the orders in question. *Underwriters Nat'l Assurance Co. v. North Carolina Life and Accident and Health Ins. Guar. Assoc.*, 455 U.S. 691, 705 (1982). Because the state court clearly lacked both subject matter and personal jurisdiction in entering orders directing the administration of the Debtor's estate, the orders are not entitled to any recognition here. The Trustee may ignore all such orders purporting to authorize and direct him in his duties.

The state-court orders are also void because the conduct of the Debtor and Ms. Dowd in obtaining the orders violated the automatic stay. The filing of a bankruptcy petition operates as an automatic stay. 11 U.S.C. §362(a). The stay is broad and prohibits a variety of actions against debtors and property of the estate. It

limits the actions not only of creditors but also of all parties in interest, including debtors. In particular, it prohibits actions to obtain possession of property of the estate or to exercise control over property of the estate. 11 U.S.C. §362(a)(3). The net proceeds of the sale of the Debtor's residence are property of the bankruptcy estate, and the actions of the Debtor and Ms. Dowd to obtain state-court orders purporting to control the disposition of such estate property clearly violated the automatic stay. Actions taken in violation of the stay are generally void. *Middle Tennessee News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir. 2001).

Ms. Dowd points out in her response that there is an exception to the automatic stay for the setting of domestic support obligations. 11 U.S.C §362(b)(2)(A)(iii). She is correct that it does not violate the stay for a state court to fix the amount of a support obligation to be paid by a debtor who is in bankruptcy. But she overlooks that the collection of any such obligation is limited to property that is not property of the estate. 11 U.S.C. §362(b)(2)(B). The actions taken by the Debtor and Ms. Dowd to force payment of the Debtor's support obligations from the house sale proceeds involved an attempt to collect from property of the estate and therefore violated the stay.

A judgment entered by a court without subject matter jurisdiction in violation of the stay is void and cannot stand. *Bandy v. DeLay (In re DeLay)*, 2018 WL 1596883, at *22 (Bankr. C.D. Ill. Mar. 29, 2018). Again, the Trustee may ignore the April 28 and June 8 state-court orders to the extent that they purport to direct his administration of the Debtor's bankruptcy estate.

In her response to the Trustee's Objection to Claim, Ms. Dowd seems to acknowledge that there may be some defects in the state-court orders but argues that she still has a valid claim against the Debtor which should be paid. To some extent, she is correct; the order setting child support is likely valid as between the Debtor and Ms. Dowd, and if the Debtor owes child support, he must pay it. She is wrong, however, in suggesting that her claim can or should be paid from the house sale proceeds held by the Trustee.

As the Trustee has now pointed out twice, §502(b)(5) requires the disallowance of claims for debts excepted from discharge under §523(a)(5) that are unmatured on the date the bankruptcy petition is filed. 11 U.S.C. §502(b)(5). Child support claims are excepted from discharge under §523(a)(5). Accordingly, only claims for child support that are matured—fully and finally due—on the date the

petition was filed may be paid by the Trustee. No part of Ms. Dowd's claim fits that definition.

When the Debtor filed his petition on July 10, 2025, he did not report paying or receiving any child support. He did not schedule any child support arrearage as a debt. The Debtor and Ms. Dowd have presented two state-court orders setting child support, but the earliest of those was entered April 28, 2026, more than nine months after this case was filed. And, although the state court may be able to enter retroactive orders for child support as it appears was done here, nothing about that retroactivity creates a debt that was actually due and fully matured before July 10, 2025. Ms. Dowd wants this Court to interpret the statute to allow her claim for the amounts that have now matured and to have the Trustee pay future amounts as they mature. But there is no fair reading of §502(b)(5) that could result in such an interpretation. Ms. Dowd's claim must be denied in its entirety by reason of the provisions of §502(b)(5).

As stated above, Debtor and Ms. Dowd violated the stay by obtaining state-court orders directing the Trustee to pay the Debtor's child support from the house sale proceeds. Neither of them will be sanctioned at this time. Both are, however, ordered to file a copy of this Order in the state-court file of their pending matter to make sure that the state court is fully advised as to the status of this bankruptcy case. Both are also advised that any further efforts to obtain state-court orders directing either this Court or the Trustee to administer the Debtor's case or disburse property of the estate in any way will likely be met with the imposition of serious sanctions.

###