**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

In re:

DAVID CHOATE HUGHES II,
Debtor.

Case No. 25-70566
Chapter 7

**FILED**
**U.S. Bankruptcy Court**
**Central District of Illinois**
08/25/2026 4:13 PM
**Adrienne D. Atkins, Clerk**

# DEBTOR'S INDEPENDENT AND SUPPLEMENTAL OBJECTION TO CLAIM NO. 26-1 OF LEA MUSE, LIMITED JOINDER IN TRUSTEE'S OBJECTION, REQUEST FOR COMPLETE DISALLOWANCE WITHOUT DISCOVERY, AND RESERVATION OF RIGHTS

David Choate Hughes II, the Debtor, appearing pro se and solely in his individual capacity, objects to Claim No. 26-1 filed by Lea Muse in the asserted amount of $3,070,000.00. The Debtor joins the Chapter 7 Trustee's objection to the extent consistent with this filing and independently requests that Claim No. 26-1 be disallowed in its entirety.

The Trustee's objection identifies three defects: the claim appears to concern a debt of Genie Investments NV, Inc., rather than a debt of David Hughes individually; the claim appears duplicative of a claim filed in the separate Florida bankruptcy; and the claim asserts damages based on fraud-related and other theories that are not established against the Debtor personally. Muse's response does not cure those defects. Instead, it relies on allegations concerning Genie, Zoomeral, affiliated entities, alleged transfers, alleged personal benefits, the Examiner's Report, and other matters from the separate Florida bankruptcy.

The Debtor does not request discovery, a continuance, or an evidentiary hearing. He requests that the Trustee's scheduled hearing proceed and that Claim No. 26-1 be disallowed on the present record.

## I. LIMITED JOINDER AND INDEPENDENT OBJECTION

1. The Trustee objects to Claim No. 26-1, filed by Lea Muse in the amount of $3,070,000.00. The Trustee states that the claim appears to concern a debt of Genie Investments NV, Inc., rather than a debt of the Debtor individually;

appears duplicative of a claim filed in the Florida bankruptcy; and asserts damages based on fraud-related and other theories. Doc. 434.

2. Muse filed a response opposing the Trustee's objection. Her response acknowledges that the payments identified in the underlying transaction were made to Genie or Belle Maison Realty, LLC, and that the promised financing was not provided. Doc. 491.

3. The Debtor joins the Trustee's objection on the grounds that the claim does not establish a personal debt owed by David Hughes and is unsupported against him individually.

4. The Debtor also files this independent objection in his own name to protect his individual and estate interests.

5. The Debtor does not represent Genie Investments NV, Inc., Zoomeral, Inc., Belle Maison Realty, LLC, or any other person or entity.

6. The Debtor does not request a continuance or delay. He respectfully requests that the Court retain the scheduled hearing date, hear the Trustee's objection, and disallow Claim No. 26-1.

7. If the Court determines that any portion of this independent objection requires separate consideration, the Debtor requests that the Court first decide the Trustee's objection and address any additional matter separately without permitting broad discovery into unrelated Florida proceedings.

## II. THE CLAIM DOES NOT ESTABLISH A DEBT OWED BY DAVID HUGHES PERSONALLY

8. Claim No. 26-1 does not identify a contract, guaranty, promissory note, judgment, or other written obligation under which David Hughes personally agreed to pay Muse.

9. The response does not identify a document showing that David Hughes personally:

a. entered into a financing agreement with Muse;

b. borrowed money from Muse;

c. guaranteed an obligation of Genie, Belle Maison, or another entity;

d. signed a personal promissory note;

e. became a judgment debtor; or

f. assumed the liabilities of Genie or any other separate entity.

10. Muse's response describes the transaction as involving Belle Maison, McMann Commercial Lending, Genie, a proposed BELOC, and a bridge-loan arrangement. Doc. 491.

11. Those allegations describe transactions involving business entities. They do not identify a personal agreement between Muse and David Hughes.

12. The fact that David Hughes may have owned an interest in or held an office with Genie does not, by itself, make him personally liable for Genie's obligations.

13. The fact that David Hughes may have owned or managed another entity, including Zoomeral, also does not establish that he personally owes Muse's alleged loss.

14. The response does not identify any agreement in which David Hughes promised that Muse or Belle Maison would receive financing, promised to repay Muse personally, or guaranteed Genie's obligations.

15. Any debt allegedly owed by Genie, Belle Maison, Zoomeral, McMann Commercial Lending, or another entity is not automatically a debt owed by David Hughes individually.

16. Muse must identify the legal basis for personal liability. The response does not do so.

17. Because the claim does not establish a presently enforceable personal obligation owed by David Hughes, Claim No. 26-1 should be disallowed in full.

## III. THE CLAIM DOES NOT ESTABLISH PRIVITY WITH DAVID HUGHES

18. Muse's response states that she and Belle Maison sought financing through a process involving McMann Commercial Lending, Genie, and related participants. Doc. 491.

19. McMann Commercial Lending was a separate third-party entity. The Debtor was not McMann Commercial Lending.

20. The Debtor did not personally enter into the transaction identified in Muse's response, did not personally receive the $25,000 payment identified by Muse, and did not personally agree to repay that amount.

21. Muse's response states that $25,000 was paid by Muse personally and $45,000 was paid by Belle Maison. Doc. 491.

22. According to Muse's own response, the payments were made to Genie, not to David Hughes individually. Doc. 491.

23. The fact that a payment was made to a corporation does not establish that the corporation's shareholder or officer personally owes the payment.

24. The response does not identify a direct contract, personal communication, personal promise, guaranty, or other undertaking by David Hughes.

25. The absence of an identified personal agreement or undertaking defeats the claim against David Hughes individually.

## IV. ALLEGATIONS CONCERNING GENIE AND ZOOMERAL DO NOT ESTABLISH PERSONAL LIABILITY

26. Muse relies heavily on allegations concerning Genie's ownership, management, funding sources, bank accounts, transfers to Zoomeral, the Zoomeral loan agreement, and the Examiner's Report. Doc. 491.

27. Those allegations concern the conduct and finances of business entities. They do not establish that David Hughes personally owes Muse the amount claimed.

28. Muse alleges that David Hughes owned an interest in Genie, held an office, participated in management, owned or controlled Zoomeral, signed an agreement on behalf of Zoomeral, and was connected to transfers between Genie and Zoomeral. Doc. 491.

29. Even accepting those allegations for purposes of argument, they do not establish:

a. that David Hughes personally received Muse's $25,000 payment;

b. that David Hughes personally promised Muse financing;

c. that David Hughes personally guaranteed Genie's obligations;

d. that David Hughes personally entered into Muse's agreement;

e. that David Hughes personally owes Muse's claimed damages; or

f. the amount of any legally recoverable personal damages.

30. Muse's theory appears to require the Court to infer personal liability from ownership, management, affiliation, transfers, and alleged benefit.

31. Those matters cannot substitute for proof of a personal contract, guaranty, judgment, or other legally enforceable obligation.

32. The Debtor denies that he personally assumed Genie's liabilities or became personally liable for every obligation incurred by Genie.

V. ALTER-EGO AND VEIL-PIERCING THEORIES ARE NOT ESTABLISHED

33. Muse states that she is not asking the Court to hold David Hughes personally responsible merely because he held an ownership interest or title. Doc. 491.

34. Nevertheless, her response asks the Court to consider ownership, management, control, alleged commingling, transfers, alleged personal benefits, and the relationship between Genie and Zoomeral as grounds for personal responsibility. Doc. 491.

35. Those allegations amount, in substance, to an attempt to develop an alter-ego, veil-piercing, fraudulent-transfer, unjust-enrichment, or similar theory.

36. Such theories require a factual and legal basis specific to David Hughes personally. They cannot be established merely by pointing to common ownership, related entities, or corporate transfers.

37. No court has entered a judgment in this case imposing personal liability on David Hughes for Muse's alleged loss.

38. No court has pierced the corporate veil between David Hughes and Genie, Zoomeral, Belle Maison, or any other entity identified in Muse's response.

39. Muse has not established that the separate legal existence of Genie or any other entity should be disregarded.

40. The claims-allowance process should not be used to impose personal liability through an unadjudicated theory that is not established by the claim documents.

41. The Debtor denies that he used any entity as his personal property, denies that he personally received Muse's payment, and denies that Muse has established any basis to disregard separate legal entities.

## VI. THE FLORIDA BANKRUPTCY DOES NOT ESTABLISH A PERSONAL CLAIM AGAINST THE DEBTOR

42. Muse relies on records and allegations from the separate Genie bankruptcy in Florida, including the Examiner's Report, Florida bank records, Florida testimony, alleged transfers, and actions involving Genie and Zoomeral. Doc. 491.

43. Genie's Florida bankruptcy is a separate proceeding involving a separate debtor.

44. The Florida bankruptcy does not establish that David Hughes personally owes Muse $3,070,000.00.

45. A finding concerning Genie, Zoomeral, or another entity cannot substitute for proof of a personal contract, guaranty, judgment, or other enforceable obligation against David Hughes.

46. The Debtor does not ask this Court to adjudicate the Florida bankruptcy, the Florida Trustee's rights, any Florida adversary proceeding, or any claim asserted there.

47. The Debtor asks only that Muse's claim against him personally be disallowed because the claim does not establish an enforceable personal debt.

48. Muse's reliance on the Florida record confirms that she is attempting to import collateral matters from the Florida bankruptcy into this personal bankruptcy case.

49. The Florida record may contain disputes concerning Genie, Zoomeral, transfers, customers, funding sources, or other entities. Those disputes do not automatically establish personal liability against David Hughes.

50. The Court should not allow the separate Florida bankruptcy to become a substitute for proving Muse's claim against this Debtor individually.

VII. THE CLAIM IS DUPLICATIVE OR, AT A MINIMUM, HAS NOT BEEN RECONCILED

51. The Trustee states that Claim No. 26-1 appears duplicative of a claim filed in the Florida bankruptcy by Belle Maison Realty, LLC. Doc. 434.

52. Muse's response confirms that Belle Maison filed a claim in the Florida bankruptcy concerning the same underlying financing transaction. Doc. 491.

53. Muse asserts that the Florida claim concerns Genie's responsibility while Claim No. 26-1 concerns David Hughes's potential personal responsibility. Doc. 491.

54. That characterization does not cure the problem. Muse must still identify the separate legal basis for asserting the same alleged loss against David Hughes personally.

55. The response does not provide a reliable reconciliation showing:

a. the exact loss asserted in the Florida claim;

b. the exact loss asserted in Claim No. 26-1;

c. which claimant owns each portion of the alleged loss;

d. whether Muse or Belle Maison has received any recovery;

e. whether the same $70,000 payment is included in both claims;

f. whether the $3,000,000 financing opportunity is claimed in both proceedings; or

g. how any recovery from Genie's estate would affect this claim.

56. Muse states that she does not seek double recovery and will provide credits for amounts recovered elsewhere. Doc. 491.

57. That statement does not establish that Claim No. 26-1 is presently allowable against David Hughes.

58. A promise to credit a future recovery does not establish the identity of the legal obligor, the amount of the personal claim, or the validity of the asserted damages.

59. At minimum, the claim should be disallowed unless and until Muse provides a claim-specific reconciliation and establishes a separate enforceable obligation owed by David Hughes personally.

## VIII. THE INCREASE FROM $70,000 TO $3,070,000 IS UNSUPPORTED

60. Muse's response states that the transaction involved $70,000 paid to Genie, consisting of $25,000 from Muse and $45,000 from Belle Maison. Doc. 491.

61. Claim No. 26-1 seeks $3,070,000.00.

62. The response does not provide a claim-specific calculation supporting the additional $3,000,000.00.

63. The response describes the additional amount as damages for a lost financing opportunity, personal debt, financing costs, lost business opportunities, consequential financial injury, and other alleged damages. Doc. 491.

64. The response acknowledges that damages above $70,000 require additional evidence and calculation. Doc. 491.

65. The present record does not establish:

a. that David Hughes personally received the $70,000;

b. that David Hughes personally promised the $3,000,000 financing;

c. that the $3,000,000 was ever owed to Muse or Belle Maison;

d. that the financing would have been approved or funded;

e. the amount of any lost opportunity;

f. the amount of any consequential damages;

g. the amount of any personal debt incurred by Muse;

h. the amount of any business loss belonging to Muse individually rather than Belle Maison; or

i. the calculation supporting $3,070,000.00.

66. The amount asserted is therefore unsupported against David Hughes individually.

67. The documented payment amount, even if accepted, does not establish a personal debt owed by David Hughes.

68. The unsupported increase is an independent reason to disallow the claim in its entirety.

## IX. THE NON-REFUNDABLE AGREEMENTS AND CONTRACTUAL LIMITATIONS ARE RELEVANT

69. The Trustee's objection and Muse's response concern agreements that Muse identifies as part of the financing transaction. Doc. 434; Doc. 491.

70. The Debtor reserves all defenses arising from those agreements, including provisions concerning non-refundable fees, limitations on damages, disclaimers, funding conditions, dispute resolution, indemnification, and the identity of the contracting parties.

71. The Debtor does not concede that any agreement creates personal liability against him.

72. To the extent the governing agreements state that diligence fees, prepaid interest, or other payments are non-refundable or do not guarantee funding, those provisions are relevant to whether Muse has an enforceable claim and to the nature and amount of any damages.

73. To the extent the agreements limit recovery to actual compensatory damages or exclude special, indirect, consequential, or punitive damages, those limitations are relevant to Muse's demand for lost opportunity, consequential, business, and other damages.

74. To the extent an agreement contains indemnification or other protections applicable to David Hughes personally, the Debtor reserves the right to rely on those provisions as defenses, credits, offsets, recoupment rights, or limitations on any amount sought.

75. The Debtor does not assert indemnification as an admission of liability. He asserts and preserves every contractual provision that may defeat, limit, or offset the claim.

X. MUSE'S FRAUD-BASED THEORIES ARE NOT ESTABLISHED AGAINST THIS DEBTOR

76. Muse's response refers to fraudulent inducement, false pretenses, misrepresentation, concealment, reliance, unjust enrichment, misuse of funds, consequential damages, lost opportunity damages, and other theories. Doc. 491.

77. Those labels do not establish a debt against David Hughes personally.

78. The response does not identify a specific false statement personally made by David Hughes to Muse.

79. It does not identify when, where, or how David Hughes personally made a representation to Muse.

80. It does not identify a personal promise by David Hughes that the BELOC financing would be funded.

81. It does not establish that Muse personally relied on a statement made by David Hughes rather than on communications from McMann, Genie, or another entity.

82. It does not establish that David Hughes personally received the payment or personally retained the alleged loss.

83. The Debtor denies personal fraud, personal misrepresentation, personal concealment, personal unjust enrichment, and personal misuse of Muse's funds.

84. The Court should not infer those matters from corporate ownership or from the existence of transfers between business entities.

## XI. NO DISCOVERY OR DELAY IS NECESSARY

85. The Debtor does not request discovery, a continuance, or an evidentiary hearing.

86. The claim should be disallowed on the present record because:

a. no personal contract has been identified;

b. no personal guaranty has been identified;

c. no personal judgment has been identified;

d. the claim appears to concern Genie or other business entities;

e. the claim overlaps with a Florida claim arising from the same transaction;

f. the increase from $70,000 to $3,070,000 is unsupported;

g. the claim relies on unadjudicated theories; and

h. the Florida proceedings do not establish personal liability here.

87. Discovery should not be used to search for a personal-liability theory that is absent from the claim documents.

88. The Debtor objects to discovery concerning unrelated entities, the Florida bankruptcy, alleged personal benefits, collateral transfers, or future Florida rulings unless Muse first identifies a specific document establishing personal liability.

89. If the Court determines that further information is necessary, the Debtor requests that Muse first be required to identify:

a. the document allegedly creating personal liability;

b. the specific representation allegedly made personally by David Hughes;

c. the calculation supporting $3,070,000.00;

d. the legal owner of each alleged loss; and

e. the reconciliation between the Florida claim and Claim No. 26-1.

## XII. RESERVATION OF RIGHTS TO AMEND AND SUPPLEMENT

90. The Debtor expressly reserves all rights to amend, supplement, clarify, or further support this objection as permitted by the Court and applicable procedure.

91. The Debtor reserves the right to submit additional documents, agreements, transcripts, records, calculations, and other materials concerning:

a. the absence of personal liability;

b. the absence of privity;

c. the identity of the actual contracting parties;

d. the amount and calculation of the claim;

e. payments, credits, offsets, and recoupment;

f. non-refundable-fee provisions;

g. nonrecourse and limitation-of-liability provisions;

h. applicable indemnification provisions;

i. the distinction between this bankruptcy case and the Florida bankruptcy; and

j. any other defense or objection that becomes necessary or appropriate.

92. The Debtor reserves all objections to any amended proof of claim, supplemental evidence, new theory of liability, request for discovery, request for continuance, or attempt to impose personal liability based on future proceedings.

93. Nothing in this objection should be construed as an admission that the Debtor personally received Muse's funds, personally promised financing, assumed Genie's liabilities, or owes Muse any amount.

94. No omission from this filing should be construed as a waiver of any claim, defense, objection, argument, remedy, or right.

95. The Debtor reserves the right to respond to any additional filing by Muse and to request appropriate relief if she attempts to expand Claim No. 26-1 beyond the claim presently filed.

## XIII. REQUEST FOR RELIEF

WHEREFORE, David Choate Hughes II respectfully requests that the Court:

A. Accept this filing as the Debtor's independent and supplemental objection and limited joinder in the Trustee's objection;

B. Proceed with the Trustee's scheduled hearing;

C. Sustain the Trustee's objection;

D. Disallow Claim No. 26-1 in its entirety;

E. Determine that Muse has not established an enforceable debt owed by David Hughes individually;

F. Determine that transactions involving Genie, Zoomeral, Belle Maison, McMann Commercial Lending, or any other separate entity do not, without legally sufficient proof, establish personal liability against David Hughes;

G. Decline to impose personal liability based on ownership, management, affiliation, alleged transfers, alleged personal benefits, alter-ego theories, veil-piercing theories, fraudulent-transfer theories, unjust-enrichment theories, or other unadjudicated theories;

H. Determine that the claim is duplicative of, or has not been reconciled with, the claim asserted in the separate Florida bankruptcy;

I. Determine that the increase from $70,000.00 to $3,070,000.00 is unsupported;

J. Decline to import collateral Florida bankruptcy matters into this personal bankruptcy case as a substitute for proof of personal liability;

K. Deny any request for broad discovery, continuance, or delay;

L. Preserve the Debtor's right to amend, supplement, clarify, and present additional evidence and defenses;

M. Preserve and apply all valid contractual defenses, including non-refundable-fee provisions, limitations of liability, nonrecourse provisions, indemnification, credits, offsets, and recoupment rights; and

N. Grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

/s/ David Choate Hughes II
David Choate Hughes II
Debtor, appearing pro se
3309 Robbins Road, PMB 160
Springfield, Illinois 62704
davidchoatehughes@gmail.com
(217) 416-5059

Dated: August 25, 2026

VERIFICATION

I declare under penalty of perjury that I have read this objection and that the factual statements are true and correct to the best of my knowledge, information, and belief.

Executed on August 25, 2026.

/s/ David Choate Hughes II
David Choate Hughes II

CERTIFICATE OF SERVICE

I certify that on August 25, 2026, I served a true and correct copy of Debtor's Independent and Supplemental Objection to Claim No. 26-1 of Lea Muse, Limited Joinder in Trustee's Objection, Request for Complete Disallowance Without Discovery, and Reservation of Rights through the Court's electronic filing system on all registered participants entitled to electronic notice and by United States Mail or email where required, including:

Lea Muse
1133 East 83rd Street, Unit 171
Chicago, Illinois 60619
lea.bellerealty@gmail.com

Robert E. Eggmann, Chapter 7 Trustee
P.O. Box 168
Columbia, Illinois 62236
reetrustee@carmodymacdonald.com

Office of the United States Trustee
USTPRegion10.PE.ECF@usdoj.gov
james.salinas@usdoj.gov

All other parties entitled to notice under applicable bankruptcy procedures.

/s/ David Choate Hughes II
David Choate Hughes II