**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

In re:

DAVID CHOATE HUGHES II,
Debtor.

Case No. 25-70566
Chapter 7

**FILED**
**U.S. Bankruptcy Court**
**Central District of Illinois**
08/27/2026 4:20 PM
**Adrienne D. Atkins, Clerk**

# DEBTORS CONDITIONAL JOINDER IN TRUSTEES OBJECTION, RESPONSE TO CLAIMANTS AUGUST 11 FILING, INDEPENDENT OBJECTION TO CLAIM NO. 9-1, AND REQUEST TO CONTINUE HEARING

David Choate Hughes II, the Debtor, appearing pro se, conditionally joins Chapter 7 Trustee Robert E. Eggmann's objection, responds to Aaron R. Cohen's August 11, 2026, filing, independently objects to Proof of Claim No. 9-1, and requests a continuance or deferral of the hearing.

The Debtor's prior objection to Claim No. 9-1 was withdrawn. This is a new and independent objection. It does not supplement, adopt, or rely on the withdrawn objection except where expressly stated.

The Debtor seeks complete disallowance under 11 U.S.C. § 502(b)(1). The claim is not enforceable against him individually because the Florida judgment is against Zoomeral, Inc. and other entities, not Hughes personally; the governing Loan Agreement identifies Zoomeral as borrower and excludes personal recourse; Cohen has not established a legally sufficient basis for veil piercing, fraudulent-transfer liability, or other personal liability; and the claim has not been reduced by contractual credits, receivables, indemnification, recoupment, or any legally available setoff.

## I. RELIEF REQUESTED

The Debtor respectfully requests that the Court:

1. Accept this filing as a conditional joinder, response, independent objection, and request to continue or defer the hearing;

2. Sustain Trustee Eggmann's objection;
3. Disallow Claim No. 9-1 in its entirety under 11 U.S.C. § 502(b)(1);
4. Determine that the Florida judgment does not establish personal liability against the Debtor;
5. Determine that the Florida judgment does not have claim-preclusive or issue-preclusive effect against the Debtor, who was not a party to that judgment and was not afforded a full and fair opportunity to litigate personal liability;
6. Determine that the Genie–Zoomeral Loan Agreement does not impose personal liability on the Debtor;
7. Reject Cohen's attempt to impose personal liability through veil piercing, alter ego, fraudulent-transfer allegations, unjust enrichment, or another unpleaded theory;
8. Determine that Cohen has not shown the elements required to disregard Zoomeral's separate legal existence;
9. Apply the Agreement's no-guaranty, nonrecourse, unsecured, cure, remedy, and indemnification provisions;
10. Require a complete accounting of the alleged transfers, contractual receivables, earned commissions, credits, repayments, indemnification, and any amounts included in the Florida judgment;
11. Apply all proven contractual credits, offset, recoupment, indemnification, and any legally available statutory setoff;
12. Reject duplicative recovery;
13. Alternatively, determine that the allowed amount of Claim No. 9-1 is zero;
14. Continue or defer the hearing to permit the Debtor to respond to Cohen's expanded personal-liability theory; and
15. Grant such other relief as the Court deems proper.

The Debtor does not ask this Court to adjudicate every possible claim that might be asserted in another proceeding. He asks the Court to determine whether Cohen has proved an enforceable, nonduplicative right to payment from this Debtor's estate.

II. PROCEDURAL HISTORY AND WITHDRAWAL OF PRIOR OBJECTION

1. Trustee Eggmann filed an objection to Claim No. 9-1. That objection states that the claim appears to be a debt of Zoomeral rather than a debt of the Debtor individually.

2. Cohen filed a response on August 11, 2026. His response asserts that:

a. Hughes allegedly owned 100 percent of Zoomeral;

b. Genie's funds were fraudulently transferred to Zoomeral;

c. More than $2.8 million was allegedly transferred from Zoomeral to Hughes's accounts or used for personal expenses; and

d. Hughes's bankruptcy prevented Cohen from filing a fraudulent-transfer complaint against Hughes in Florida.

3. The Debtor's prior objection was withdrawn.

4. This filing is new and independent. It responds to Cohen's August 11 filing and addresses the personal-liability theories Cohen may assert or may be attempting to preserve.

III. STANDING

A. The Debtor Has a Direct Pecuniary Interest

5. Claim No. 9-1 seeks $1,771,555.74 from the Debtor's Chapter 7 estate.

6. If allowed, the claim will reduce distributions to other creditors and may eliminate a surplus otherwise payable to the Debtor.

7. The Debtor therefore has a direct pecuniary interest in the claim's allowance, amount, and enforceability.

8. Under 11 U.S.C. § 502(a), a filed claim is deemed allowed only unless a party in interest objects.

9. The Debtor is a party in interest because the claim directly affects the estate's distribution and the possibility of a surplus.

10. The Seventh Circuit recognizes bankruptcy standing where the party has a pecuniary interest in the result. A debtor may establish such an interest by showing a reasonable possibility of a surplus after payment of allowed claims and administrative expenses. In re Cult Awareness Network, Inc., 151 F.3d 605, 607–08 (7th Cir. 1998).

B. The Estate Has a Reasonable Possibility of a Surplus

11. Based on the Debtor's current review of the claims register, the few presently uncontested claims appear primarily to be ordinary credit-card balances and similar consumer obligations.

12. Many other claims appear to derive from, or depend upon, transactions and theories arising from the separate Jacksonville, Florida bankruptcy of Genie Investments NV, Inc.

13. If Claim No. 9-1 and other unsupported or derivative Florida-related claims are disallowed or materially reduced, the estate may be able to pay its remaining allowed claims and administrative expenses and retain a surplus for the Debtor.

14. The Debtor does not ask the Court to determine the final surplus amount solely from this preliminary review. He requests an opportunity to establish the estate's assets, administrative expenses, and allowed claims through the claims register, Trustee's reports, schedules, and admissible evidence.

15. The reasonable possibility of a surplus independently establishes the Debtor's pecuniary interest and standing. In re Cult Awareness Network, Inc., 151 F.3d 605, 607–08 (7th Cir. 1998).

C. The Debtor Has a Direct Interest in the Receivable and Defenses

16. The Debtor also asserts a direct economic interest in the Zoomeral receivable and related contractual rights.

17. Zoomeral's records and the assignment materials identify an ownership allocation of approximately 82.5 percent to Hughes and 17.5 percent to John Michael Cohan.

18. The March 16, 2025, dissolution and assignment materials state that Zoomeral assigned its assignable receivables and related rights to Hughes and Cohan in those proportions, without transferring Zoomeral's general liabilities.

19. The Debtor asserts this interest subject to the Court's determination of the assignment's validity, scope, enforceability, and legal effect.

20. Cohen cannot rely on Zoomeral's corporate transactions as evidence of personal liability while disregarding the related receivable, contractual credits, and defenses.

D. Cohen Cannot Defeat Standing by Characterizing the Objection as Derivative

21. The Debtor is not asserting a claim on behalf of Zoomeral.

22. He is objecting to a claim against his own bankruptcy estate and asserting his own direct defenses to personal liability and the amount of the claim.

23. The Debtor's standing does not depend solely on shareholder status, corporate ownership, or the assignment.

24. It rests independently on:

a. The claim's direct effect on his estate;

b. The reasonable possibility of a surplus;

c. His direct pecuniary interest in the allowance of the claim; and

d. His own contractual and personal-liability defenses.

E. The Offset and Indemnification Provisions Do Not Eliminate Standing

25. The Debtor does not contend that the receivable or indemnification provisions deprive Cohen of all authority to file a proof of claim.

26. Those matters are defenses to enforceability, amount, recoupment, indemnification, and personal liability.

27. Cohen's authority to file a claim and the claim's merits are separate questions.

28. The existence of a potential offset or indemnification right strengthens, rather than eliminates, the Debtor's pecuniary interest because it may reduce or eliminate the claim against his estate.

IV. GOVERNING CLAIM-ALLOWANCE STANDARD

29. Under 11 U.S.C. § 502(b)(1), the Court must disallow a claim to the extent it is "unenforceable against the debtor . . . under any agreement or applicable law."

30. Bankruptcy law generally looks to applicable nonbankruptcy law to determine whether an enforceable right to payment exists. Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co., 549 U.S. 443, 450–51 (2007).

31. A proof of claim cannot create a debt that the judgment, contract, or applicable law does not impose.

32. Under Fed. R. Bankr. P. 3001(f), a properly executed proof of claim constitutes prima facie evidence of validity and amount.

33. The Debtor rebuts that prima facie effect by identifying:

a. The Florida judgment's identification of Zoomeral and other entities as judgment debtors;

b. The absence of a personal judgment against Hughes;

c. The Loan Agreement's identification of Zoomeral as borrower;

d. The no-guaranty, nonrecourse, and unsecured provisions;

e. The indemnification provision;

f. The assigned receivable and contractual offset; and

g. The absence of a complete, nonduplicative accounting supporting personal liability.

34. Cohen must then establish the claim's validity and amount by a preponderance of the evidence.

## V. THE FLORIDA JUDGMENT DOES NOT ESTABLISH PERSONAL LIABILITY

35. Claim No. 9-1 is identified as being based on a final judgment against Zoomeral, Inc.

36. Cohen's August 11 response states that the Florida Court entered judgment against Zoomeral and other entities. It does not identify Hughes as a judgment debtor.

37. The Debtor was not personally adjudicated liable by that judgment.

38. Cohen has not identified:

a. A personal judgment against Hughes;

b. A personal guaranty;

c. An individual promissory note;

d. An assumption agreement;

e. A settlement imposing personal liability; or

f. Any other executed instrument establishing that Hughes personally owes the judgment amount.

39. A judgment against a corporation does not automatically become a judgment against its shareholder, officer, director, or authorized corporate representative.

40. The Florida judgment therefore cannot, standing alone, support allowance of Claim No. 9-1 against Hughes.

## VI. JUDGMENT PRECLUSION AND ISSUE PRECLUSION DO NOT BIND THE DEBTOR

### A. Cohen May Argue That the Florida Judgment Established the Debt

41. Cohen may argue that the Florida judgment conclusively established the amount and validity of the underlying debt and that the Illinois Court must allow the claim.

42. That argument fails as applied to Hughes personally.

43. The judgment may establish an adjudicated obligation of the entities named in the judgment. It does not establish Hughes's personal liability unless Hughes was a party, in privity with a party, or otherwise subject to a recognized exception to the general rule against binding nonparties.

B. The Debtor Was Not a Party to the Florida Judgment

44. Hughes was not named as a defendant in the judgment identified in Claim No. 9-1.

45. He did not litigate personal liability in that action.

46. He did not personally have any full and fair opportunity in that action to litigate:

a. Whether he personally guaranteed the Loan Agreement;

b. Whether Zoomeral's corporate form should be disregarded;

c. Whether the alleged transfers were for consideration;

d. Whether Zoomeral owned a receivable exceeding the claim;

e. Whether indemnification applied; or

f. Whether Cohen's present theory is duplicative.

47. Due process generally prohibits binding a nonparty to a judgment absent recognized representation or privity. Taylor v. Sturgell, 553 U.S. 880, 893–95 (2008).

48. Hughes was not Zoomeral's legal representative in the Florida litigation merely because he was an officer or shareholder.

49. His participation in corporate affairs did not make him a party to the Florida judgment or provide the procedural protections required for preclusion.

C. No Privity Has Been Established

50. Cohen may argue that Hughes was in privity with Zoomeral because he controlled the company or signed corporate documents.

51. Privity cannot be established merely by alleging corporate ownership or control.

52. Cohen must identify the specific recognized relationship that would permit a judgment against Zoomeral to bind Hughes individually.

53. No such relationship has been identified.

54. A corporation and its shareholder are not automatically the same legal person for preclusion purposes.

D. The Default Judgment Does Not Resolve Issues Never Litigated Against Hughes

55. Cohen may also argue that the Florida judgment necessarily determined that the transfers were fraudulent.

56. Even if the judgment resolved claims against Zoomeral, it did not litigate or determine Hughes's personal liability.

57. Issue preclusion requires, at minimum, that the issue was actually litigated and determined and that its determination was essential to the judgment. A judgment entered against one party cannot ordinarily establish an issue against a nonparty who did not litigate it.

58. Cohen has not shown that Hughes actually litigated because he had no opportunity or ability to:

a. The alleged transfers to him personally;

b. His intent;

c. The consideration received by Zoomeral;

d. The validity of the assignment;

e. The application of indemnification; or

f. Any veil-piercing elements.

59. The Florida judgment therefore cannot be used offensively to establish those matters against Hughes in this claims-objection proceeding.

E. The Debtor Is Not Collaterally Attacking the Judgment

60. The Debtor is not asking this Court to vacate or reverse the Florida judgment against Zoomeral.

61. He accepts that the Florida judgment may have consequences against the parties and entities bound by it at this time.

62. The narrower issue is whether Cohen has proved that the judgment is enforceable against Hughes personally.

63. That issue remains open because Hughes was not the judgment debtor and because Cohen's present theory depends on additional facts and legal elements.

VII. VEIL PIERCING: ANTICIPATED ARGUMENTS AND RESPONSES

A. Cohen Must Identify the Governing Law

64. Cohen may characterize Claim No. 9-1 as an alter-ego or veil-piercing claim.

65. Veil piercing is an exceptional remedy, not a presumption arising from ownership or corporate office.

66. The Court should require Cohen to identify the governing law and the specific elements he contends apply.

67. Zoomeral was incorporated in Delaware. Its certificate of dissolution identifies Zoomeral as a Delaware corporation formed on March 6, 2018.

68. The Seventh Circuit has explained that veil-piercing analysis depends on the governing state law and generally requires both unity of interest and circumstances making respect for the corporate form inequitable. Wachovia Securities, LLC v. Banco Panamericano, Inc., 674 F.3d 743, 751–55 (7th Cir. 2012).

B. Ownership Is Not Enough

69. Cohen alleges that Hughes owned 100 percent of Zoomeral.

70. That allegation is contradicted by the Examiner's Report, which states:

"ZOOMERAL, Inc. ('ZOOMERAL') was formed in Delaware on March 6, 2018. Hughes owns 82.5% and Cohan owns 17.5%."

71. The dissolution assignment likewise identifies Hughes's interest as 82.5 percent and Cohan's as 17.5 percent.

72. Cohen's incorrect ownership allegation should not be treated as an established fact.

73. Even complete ownership would not, standing alone, establish veil piercing or personal liability.

74. A shareholder's ownership, office, control, or signature on behalf of a corporation does not itself make the shareholder personally liable for corporate debt.

C. The Record Does Not Establish Unity of Interest

75. Cohen alleges that Hughes "essentially used the Zoomeral bank account as a personal bank account."

76. That allegation is disputed and unsupported by the transaction-level information necessary to determine:

a. The source of each payment;

b. The recipient;

c. The purpose;

d. Whether the payment was compensation, reimbursement, repayment, distribution, loan proceeds, or a corporate expense;

e. Whether consideration was provided;

f. Whether the payment was included in the Florida judgment; and

g. Whether the payment was part of an earned contractual receivable.

77. Alleged transfers alone do not establish every element of veil piercing.

78. Cohen must prove the totality of the circumstances, including corporate formalities, records, capitalization, commingling, use of corporate assets, and whether the corporation was operated as a mere instrumentality.

79. The existence of corporate records, a Delaware certificate of incorporation, a written Loan Agreement, an ownership structure involving two shareholders, and a formal dissolution process is inconsistent with treating corporate separateness as nonexistent.

80. The dissolution certificate states that the dissolution was authorized under Delaware law and identifies Hughes as CEO and director, not as the corporation itself.

D. The Second Veil-Piercing Requirement Is Not Established

81. Cohen must also show that respecting Zoomeral's separate existence would sanction fraud or promote injustice.

82. An unsatisfied corporate judgment is not, by itself, sufficient to satisfy that requirement.

83. Cohen has not shown that Zoomeral was created as a sham, that Hughes used the corporation to evade a personal obligation, or that respecting Zoomeral's separate existence would produce an inequity independent of the existence of the corporate debt.

84. The alleged transfers cannot substitute for proof of the second requirement.

85. If Cohen contends that particular transfers were fraudulent, he must prove the elements and remedy of a fraudulent-transfer claim as to each transfer. He cannot convert that theory into automatic personal liability for the entire corporate judgment.

E. Cohen Must Separate Veil Piercing From Fraudulent-Transfer Liability

86. Veil piercing and fraudulent-transfer liability are different legal theories.

87. Veil piercing seeks to treat a corporation's obligation as an individual's obligation.

88. Fraudulent-transfer liability concerns particular transfers and requires proof of the applicable statutory elements, defenses, and remedies.

89. Cohen's August 11 response refers to the Florida and Illinois fraudulent-transfer statutes but does not identify:

a. Each transfer challenged;

b. The transfer date;

c. The amount;

d. The transferor and transferee;

e. The consideration;

f. The applicable statutory provision;

g. The remedy sought; or

h. The relationship between the alleged transfers and the $1,771,555.74 judgment.

90. Cohen cannot obtain allowance of the entire Florida judgment by combining an entity judgment with unadjudicated transfer allegations.

91. The Court should require Cohen to identify the precise theory supporting personal liability and the amount recoverable under that theory.

F. The Loan Agreement Negates an Inference of Personal Assumption

92. The September 5, 2022, Loan Agreement identifies Genie Investments NV as lender and Zoomeral as borrower.

93. Section 1 describes the loan as a nonrecourse unsecured line of credit to Zoomeral.

94. Sections 23 through 26 state that no collateral is required, no personal guarantee is required, the loan is nonrecourse, and the loan is unsecured.

95. The Agreement's repayment obligation is imposed on "the Borrower," meaning Zoomeral, not Hughes individually.

96. Hughes signed on behalf of Zoomeral.

97. The Agreement therefore affirmatively contradicts an inference that Hughes personally assumed Zoomeral's obligation.

G. Corporate Transfers Do Not Automatically Establish Personal Liability

98. Cohen alleges that Zoomeral transferred money to Hughes or paid personal expenses.

99. Even if a particular transfer were ultimately proven, Cohen would still need to establish the legal consequence of that transfer.

100. The transfer might support a claim for restitution, fraudulent-transfer relief, unjust enrichment, breach of duty, or another remedy, but the remedy and amount would depend on the governing law and facts.

101. A transfer does not automatically:

a. Convert Zoomeral's loan debt into Hughes's debt;

b. Amend the Loan Agreement;

c. Create a guaranty;

d. Establish veil piercing;

e. Establish the amount of the Florida judgment against Hughes; or

f. Eliminate contractual credits, receivables, indemnification, or defenses.

H. Cohen Cannot Use a New Theory to Avoid the Claim's Defects

102. Claim No. 9-1 identifies the Florida judgment against Zoomeral.

103. Cohen's August 11 filing attempts to add a personal-transfer theory after Trustee Eggmann identified the wrong-debtor defect.

104. A new theory does not retroactively change the judgment debtor or establish personal liability.

105. If Cohen seeks to amend the claim to assert an independent personal-liability theory, the Debtor reserves all objections concerning amendment, timeliness, notice, due process, jurisdiction, pleading sufficiency, discovery, and the need for an adversary proceeding or other appropriate procedure.

## VIII. PERSONAL-LIABILITY DEFENSES

106. Cohen may argue that Hughes is personally liable because he:

a. Owned Zoomeral;

b. Served as its CEO or director;

c. Signed the Loan Agreement;

d. Controlled its bank accounts;

e. Received transfers; or

f. Used corporate funds for personal expenses.

107. None of those allegations, separately or collectively, establishes personal contractual liability without proof of a guaranty, assumption, alter ego, fraudulent-transfer liability, or another recognized legal basis.

108. The Loan Agreement contains no personal guarantee and expressly provides for nonrecourse, unsecured corporate borrowing.

109. The Debtor signed as Zoomeral's representative, not as an individual borrower or guarantor.

110. The Florida judgment does not name Hughes as a judgment debtor.

111. Cohen has not identified an enforceable personal obligation under any agreement or applicable law.

112. Claim No. 9-1 is therefore unenforceable against Hughes under 11 U.S.C. § 502(b)(1) unless Cohen proves an independent personal-liability theory and a nonduplicative amount.

## IX. INDEMNIFICATION IS AN INDEPENDENT DEFENSE AND REDUCTION

113. Section 5 of the Loan Agreement requires Genie to indemnify and hold Zoomeral harmless for risks associated with the proper application of funds under the business plan.

114. Section 28 provides:

"The Lender shall indemnify, defend, and hold harmless the Borrower and its respective officers and employees from any liabilities, claims, claw backs, suits, judgments, and damages arising as a result of the performance of the obligations under this Agreement."

115. Hughes asserts the protection available to him as a Zoomeral officer or employee to the extent Cohen's theory arises from the receipt, use, transfer, or application of funds advanced under the Agreement.

116. The Debtor does not contend that indemnification alone automatically resolves every possible claim Cohen might assert.

117. It is, however, a direct contractual defense and potential source of reimbursement or reduction that must be considered before any personal balance is allowed.

118. Cohen cannot rely on the Loan Agreement as evidence of liability while disregarding the Agreement's express protection of Zoomeral and its officers and employees.

119. At minimum, any claim based on the Agreement must be reduced to the extent the indemnification provision covers the asserted liability.

X. RECEIVABLE, OFFSET, RECOUPMENT, AND SETOFF

120. The Examiner's Report states that "Zoomeral earned commissions upon loans closing from Genie NV."

121. The Loan Agreement and related business records identify a contractual relationship between Genie and Zoomeral.

122. The Debtor asserts that Zoomeral's earned commissions, origination fees, success fees, bridge-loan compensation, due-diligence allocations, credits, and related receivables exceed Claim No. 9-1, subject to reconciliation.

123. The asserted accounting identifies approximately $1,984,562 in Zoomeral contractual compensation compared with the $1,771,555.74 claim.

124. The Debtor does not ask the Court to accept an unreconciled calculation as conclusive. He requests a transaction-level accounting that distinguishes:

a. Amounts loaned by Genie to Zoomeral;

b. Compensation earned by Zoomeral;

c. Amounts transferred to Hughes;

d. Repayments and credits;

e. Amounts included in the Florida judgment;

f. Amounts included in the Examiner's analysis; and

g. Amounts asserted in Claim No. 9-1.

125. The March 16, 2025, assignment purports to transfer Zoomeral's assignable receivables and related rights to Hughes and Cohan in their respective ownership proportions.

126. The Debtor asserts contractual offset, recoupment, credits, indemnification, and lack of personal liability independently of statutory setoff.

127. To the extent the statutory requirements are satisfied, the Debtor also asserts setoff under 11 U.S.C. § 553(a).

128. The Debtor recognizes that statutory setoff ordinarily requires mutual, prepetition, enforceable debts between the same parties in the same legal capacities. He does not contend that the assignment automatically establishes statutory setoff.

129. If the receivable and credits are established, Cohen cannot prove a positive, enforceable, nonduplicative balance against Hughes.

XI. COHEN HAD NOTICE OF THE RECEIVABLE

130. Cohen's counsel stated that the Genie loans were included among Genie's accounts receivable and that the Trustee was seeking repayment from borrowers.

131. The Debtor and Cohan also presented information concerning Zoomeral's contractual receivable and asserted offset.

132. Prior notice does not alone establish the final legal validity or amount of the offset.

133. It does establish that the claim should not be calculated as though Genie's only relevant transaction was money transferred to Zoomeral.

134. Cohen must account for reciprocal contractual obligations, earned compensation, credits, and any recovery already included in the Florida judgment.

XII. NO DUPLICATIVE RECOVERY

135. Cohen must distinguish among:

a. The Florida judgment against Zoomeral;

b. Amounts included in the Examiner's transfer schedule;

c. Amounts allegedly transferred to Hughes personally;

d. Any recovery from Zoomeral or another entity; and

e. Claim No. 9-1 against Hughes's estate.

136. Cohen may not recover the same alleged loss once through the Florida judgment and again as a personal claim against Hughes without proving a separate legal basis and nonduplicative damages.

137. The amount of Claim No. 9-1 cannot be established without that accounting.

XIII. THE AUGUST 11 RESPONSE DOES NOT CURE THE DEFECTS

138. Cohen's response asserts that the Debtor's bankruptcy prevented Cohen from filing a fraudulent-transfer complaint against Hughes in Florida.

139. The Debtor does not dispute that the automatic stay may have affected Cohen's ability to proceed against Hughes personally.

140. But Cohen could have sought appropriate relief from the stay under 11 U.S.C. § 362(d) if he believed that a separate Florida action against Hughes was necessary.

141. The record presently shows no request by Cohen for stay relief during the more than one year before his August 11, 2026, response.

142. This procedural history does not alone establish bad faith, waive any claim, or prove that Cohen lacked authority to file Claim No. 9-1.

143. It does establish that Cohen did not obtain a judgment against Hughes personally and cannot use the automatic stay as a substitute for proving personal liability in this claims proceeding.

144. Cohen's failure to pursue a separate personal-liability action does not transform the Florida judgment against Zoomeral into a judgment against Hughes.

145. The August 11 filing therefore remains dependent on unadjudicated allegations concerning transfers, veil piercing, or another independent theory.

XIV. THE CLAIM SHOULD BE DISALLOWED

146. The existing record establishes:

a. Claim No. 9-1 identifies a judgment against Zoomeral and other entities;

b. Hughes was not identified as a judgment debtor;

c. Zoomeral was a separate Delaware corporation;

d. The Examiner's Report identifies Hughes's ownership as 82.5 percent and Cohan's as 17.5 percent;

e. The Loan Agreement identifies Zoomeral as borrower;

f. The Agreement is unsecured and nonrecourse;

g. No personal guarantee was required;

h. The Agreement contains indemnification protections;

i. Zoomeral earned commissions from Genie;

j. Zoomeral's receivable was assigned before dissolution;

k. Cohen has not provided a complete transaction-level accounting; and

l. The estate has a direct pecuniary interest and a reasonable possibility of a surplus.

147. Cohen has not established an enforceable personal debt.

148. Cohen has not established claim or issue preclusion against Hughes.

149. Cohen has not established veil piercing.

150. Cohen has not established fraudulent-transfer liability against Hughes.

151. Cohen has not established a nonduplicative amount.

152. Claim No. 9-1 should therefore be disallowed in its entirety under 11 U.S.C. § 502(b)(1).

153. Alternatively, after applying proven credits, receivables, offset, recoupment, indemnification, and any legally available setoff, the allowed amount should be determined to be zero.

XV. REQUEST TO CONTINUE OR DEFER THE HEARING

154. Trustee Eggmann's objection raised the wrong-debtor and personal-liability defects.

155. Cohen's response expanded the theory to include alleged personal transfers, fraudulent-transfer liability, and the effect of the automatic stay.

156. The expanded theory requires consideration of:

a. The Florida judgment;

b. The Loan Agreement;

c. The corporate ownership structure;

d. The indemnification provisions;

e. The dissolution assignment;

f. The receivable and offset materials;

g. The claims register and surplus issue;

h. The precise transfers allegedly relied upon; and

i. The distinction between corporate liability and personal liability.

157. The Debtor requests a continuance or deferral sufficient to respond to the expanded theory and present admissible supporting materials.

158. If the Court declines to continue the hearing, the Debtor requests that the Court deny allowance on the existing record or establish a schedule for completing the record before ruling.

XVI. RESERVATION OF RIGHTS

159. The Debtor reserves all rights to amend or supplement as permitted by the Court, including in response to:

a. Any amended proof of claim;

b. Any newly asserted veil-piercing theory;

c. Any fraudulent-transfer theory;

d. Any new personal-liability theory;

e. Any new damages calculation;

f. Any assertion of claim or issue preclusion;

g. Any challenge to standing;

h. Any challenge to the assignment;

i. Any dispute concerning indemnification, offset, recoupment, or setoff; and

j. Any request for discovery or an evidentiary hearing.

XVII. CONCLUSION

Claim No. 9-1 is based on a judgment against Zoomeral and other entities, not against Hughes personally.

The Florida judgment does not bind Hughes on personal liability because he was not the judgment debtor, was not a party to the judgment, and did not litigate the issues Cohen now raises.

The Loan Agreement identifies Zoomeral as borrower, excludes personal guarantees, provides for nonrecourse unsecured borrowing, restricts remedies, and protects Zoomeral and its officers through indemnification.

Cohen's allegations concerning ownership, control, corporate transfers, or personal expenses do not automatically establish veil piercing or fraudulent-transfer liability. Cohen must identify and prove the applicable theory, its elements, and a nonduplicative amount.

The Debtor has standing because Claim No. 9-1 directly affects his estate, the estate has a reasonable possibility of a surplus, and he has direct personal defenses and economic interests affected by the claim.

Claim No. 9-1 should be disallowed in its entirety under 11 U.S.C. § 502(b)(1). Alternatively, the claim should be reduced to zero after application of proven contractual credits, receivables, recoupment, indemnification, and any legally available setoff.

XVIII. REQUEST FOR RELIEF

WHEREFORE, the Debtor respectfully requests that the Court:

1. Accept this filing as a conditional joinder, response, independent objection, and request to continue or defer;
2. Recognize that the prior objection was withdrawn and that this filing is new and independent;
3. Sustain Trustee Eggmann's objection;
4. Disallow Claim No. 9-1 in its entirety under 11 U.S.C. § 502(b)(1);
5. Determine that the Florida judgment does not establish personal liability against the Debtor;

6. Determine that the Florida judgment does not have claim-preclusive or issue-preclusive effect against the Debtor on the personal-liability issues asserted by Cohen;
7. Determine that Cohen has not established a basis to pierce Zoomeral's corporate veil;
8. Reject Cohen's present fraudulent-transfer and personal-liability theories as insufficient to support allowance on the existing record;
9. Determine that the Loan Agreement does not impose personal liability on the Debtor;
10. Apply the Agreement's no-guaranty, nonrecourse, unsecured, cure, remedy, and indemnification provisions;
11. Consider the pre-dissolution assignment and the Debtor's direct interest in the receivable and related defenses;
12. Require a complete, nonduplicative accounting;
13. Apply proven contractual credits, offset, recoupment, indemnification, and any legally available statutory setoff;
14. Reject duplicative recovery;
15. Alternatively, determine that the allowed amount of Claim No. 9-1 is zero;
16. Continue or defer the hearing; and
17. Grant such other relief as the Court deems proper.

Respectfully submitted,

/s/ David Choate Hughes II
David Choate Hughes II, pro se
3309 Robbins Road, PMB 160
Springfield, Illinois 62704
Email: davidchoatehughes@gmail.com
Telephone: (217) 416-5059

Dated: August 27, 2026

**CERTIFICATE OF SERVICE**

I certify that on August 8/27/2026, I served a true and correct copy of the foregoing Debtor's Conditional Joinder in Trustee's Objection, Response to Claimant's August 11 Filing, Independent Objection to Claim No. 9-1, and Request to Continue Hearing through the Court's CM/ECF system on all registered participants entitled to electronic notice.

I further certify that any required paper copies were served by first-class United States mail, postage prepaid, on the parties entitled to service, including:

Aaron R. Cohen, Chapter 7 Trustee
c/o Akerman LLP
401 East Jackson Street, Suite 1700
Tampa, Florida 33602

Thomas B. Fullerton, Esq.
Akerman LLP
71 South Wacker Drive, 47th Floor
Chicago, Illinois 60602

Robert E. Eggmann, Chapter 7 Trustee
P.O. Box 168
Columbia, Illinois 62236