**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

In re:
**DAVID CHOATE HUGHES,**
Debtor.
Case No. 25-70566
Chapter 7

FILED TIME AM8:22
2026 OCT 19 SPR
ADRIENNE D. ATKINS
CLERK, USBC CDIL

**MOTION OF CHARLES BLAKE STRINGER FOR LIMITED STAY OF SUBSTANTIVE ADMINISTRATION PENDING RELATED DETERMINATIONS IN GENIE INVESTMENTS NV INC., FOR INVESTIGATION OF FALSE OATH AND CONCEALMENT REGARDING ZOOMERAL, AND FOR RELATED RELIEF**

Charles Blake Stringer ("Movant"), the largest creditor in the related Chapter 7 case of Genie Investments NV Inc., Case No. 3:24-bk-00496-BAJ (M.D. Fla.), and the holder of Claim No. 44-1 in this case, respectfully moves this Court for a limited stay of substantive administration and claim resolution pending determinations in the Genie case, for investigation and judicial findings concerning the Debtor's false oath and concealment of an insider entity, and for related relief. In support, Movant states as follows:

## I. INTRODUCTION AND NOTICE TO THE COURT

**1.** This motion relates to the Chapter 7 bankruptcy case of Genie Investments NV Inc., Case No. 3:24-bk-00496-BAJ, pending in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Genie case"). The Court is aware of that related proceeding. In the Genie case the Chapter 7 Trustee is tracing substantial funds that originated with Genie and moved through an undisclosed insider entity controlled by the Debtor. The proper characterization of those transfers remains pending before the Florida court.

**2.** On October 16, 2026, Movant sent written notice by email to counsel for the Chapter 7 Trustee in this case, setting forth the grounds stated herein and requesting that the Trustee seek or join in a limited stay. Movant now places this Court on formal notice of the same facts. Service of related filings in this case has included Robert E. Eggmann III as Chapter 7 Trustee, Thomas Riske as counsel for the Trustee, and Thomas H. Wilson as counsel for certain claimants.

**3.** The Debtor has filed his own Independent and Supplemental Objection to Claim No. 44-1 (Doc. 626), joining the Trustee's objection and requesting that the claim be disallowed in its entirety on the present record, without discovery or continuance. In that filing the Debtor expressly acknowledges that the claim raises issues of affiliated entities, alleged transfers, personal benefits, alter-ego theories, and matters from the Genie case. The Debtor's request for an immediate ruling in isolation from those pending determinations is itself a reason for the limited stay requested here.

**4.** A central purpose of the limited stay requested here is the preservation of Claim No. 44-1. Multiple judicial issues—including the pending Ponzi-scheme determination in the Genie case, the tracing of funds through the undisclosed insider entity, and the Debtor's false oath and concealment in this case—should not be prematurely adjudicated in isolation. These issues require timely and coordinated attention so that the claim is not resolved on an incomplete record. While Movant does not purport to represent other claimants, the same considerations of fairness apply to the broader body of creditors and claimants whose recoveries may be affected by the proper characterization of the transfers at issue. Movant does not seek a double recovery. Any amount recovered on account of the same losses in the Genie case will be credited against Claim No. 44-1 in this case, and vice versa, so that creditors are not paid twice on the same obligation.

## II. BACKGROUND

**5.** Movant is the largest creditor in Genie Investments NV Inc. Movant originally filed an adversary proceeding in the Genie case seeking a judicial determination that Genie operated as a Ponzi scheme, together with related findings of fraud, constructive fraud, constructive trust, and fraudulent inducement. For efficiency, that adversary was dismissed without prejudice by agreement with the Trustee and the Court, and the same issues were thereafter presented through Movant's amended proof of claim. Judge Jason Burgess granted a full hearing on those issues, originally scheduled for early January and now set to begin on February 4, 2027.

**6.** The funds that reached the Debtor personally originated in the Genie scheme. Those funds were transferred to Zoomeral, an insider entity controlled by the Debtor, and then loaned from Zoomeral to the Debtor individually in an approximate amount of $1.7 to $2 million. The Debtor testified in a 341 meeting that monies came to him from a loan source of Zoomeral. The Chapter 7 Trustee in the Genie case has filed Claim No. 9-1 in this case and has obtained a judgment in the Middle District of Florida against Zoomeral and related entities.

Zoomeral and other insider entities controlled by the Debtor and John-Michael Cohan were disclosed on the schedules in the Genie case. After the Examiner's Report (Doc. 146) was filed and the Genie case was converted from Chapter 11 to Chapter 7, the Debtor and Cohan began dissolving those entities. The dissolution of Zoomeral—the Debtor's primary source of revenue and the entity through which substantial Genie funds had been transferred—occurred shortly before the Debtor filed this Illinois bankruptcy. That sequence presents a classic pattern of avoidance: the Debtor and his partner disclosed the entities while under the scrutiny of the Florida court and examiner, then dissolved them and omitted them from the sworn schedules in this case. The Debtor's request for an immediate ruling on Claim No. 44-1, without discovery or continuance, is consistent with an effort to obtain a determination before the concealment and the unresolved character of the transfers can be fully examined.

The same pattern appears in the Debtor's claims regarding properties associated with Mitchell Mims and Mims-IPR, LLC. The Debtor and John-Michael Cohan have asserted that they completed a foreclosure and private auction of those properties back to themselves. Those assertions are highly disputed. The record indicates that the Debtor and Cohan never fulfilled or advanced the loan under the terms of the underlying contract, yet they caused UCC filings to be made and purported to conduct a private foreclosure and auction. This approach—not funding or only partially funding loans, then placing unlawful liens and asserting ownership through private foreclosure or auction—is the central mechanism of the scheme the Debtor and Cohan operated through multiple entities across the country. The Debtor has not produced any recorded deed or title evidencing ownership of the Mims properties. The claims of ownership reflected in the Debtor's schedules and filings in this case are therefore untrue and falsified, and they form part of the same pattern of concealment and avoidance that warrants the limited stay and investigation requested here.

**7.** The Debtor's original Statement of Financial Affairs (Doc. 15) contained no reference to Zoomeral. The amended Statement of Financial Affairs (Doc. 17) disclosed the entity only as a source of modest income and still listed no debt owed to it. On both documents the Debtor answered **"No"** to the insider-payment questions. As set forth more fully below, those omissions constitute concealment and a false oath.

**8.** This concealment constitutes a false oath and a pattern of deception. The Debtor signed both the original and amended Statements of Financial Affairs under penalty of perjury. By first omitting Zoomeral entirely, then disclosing it only as a source of roughly $50,000 per year in income while continuing to conceal the multi-million-dollar insider debt he himself admitted under oath existed and was used for personal mortgage payments, he created a false perception and cover-up of his true financial relationship with the company. Was he lying then, or is he lying now? Either way, the omission of the debt is perjury and concealment. Because of this false oath and concealment, the Debtor cannot now argue that he did not put the debt on his schedules, that he was not part of the company, or that dissolution somehow wiped the slate clean. Bankruptcy law does not permit a debtor to eliminate an insider debt by simply failing to schedule it and

then claiming the company was dissolved. The Genie Trustee's claim already on file in this case (Claim No. 9-1) further confirms the existence of substantial transfers into the insider entity. The Court and the Trustee are also entitled to question how a debtor reporting only approximately $50,000 per year in income can sustain the carrying costs of a residence valued over $700,000 (mortgage, insurance, utilities, taxes, and other living expenses) without a negative cash-flow position, further undermining the credibility of the disclosures he has made under oath.

**9.** It is a mystery why this Court, the Trustee, or others reviewing the case have not recognized or inquired further once the Trustee from another federal court filed a claim in this very case (Claim No. 9-1) naming Zoomeral and asserting that money is owed because of transfers. That claim alone should have prompted inquiry into why no Zoomeral debt or entity appears on the Debtor's own schedules. The combination of the schedules, the Debtor's 341 testimony under oath that monies came to him from a loan source of Zoomeral and that he used those funds to pay his personal bills (including his mortgage), and the Genie Trustee's claim presents a clear issue of false oath and concealment that warrants this Court's attention and investigation before further substantive administration proceeds.

**10.** There is no truer evidence of the Debtor's knowledge and intent than his own words under oath. At the 341 meeting conducted on August 15, 2025, beginning at approximately the 54-minute and 25-second mark of the recorded hearing (and continuing for roughly one and a half minutes), the Debtor testified as follows regarding a line of credit from Zoomeral used for personal purposes, including a mortgage payment: "There could have been, for example… a line of credit from [Zoomeral] to myself that is a revolving, moving up and down line of credit. The company can decide to say make me a loan… even for personal things that I do, and I would owe that money back as a shareholder to the company. So could it be possible that the money owed back to the company from David Hughes to the company had used money to pay part of a mortgage? **The answer to that is yes.**" When then asked whether that debt or those payments were reflected on any of the schedules he had filed in this bankruptcy, the Debtor-David Hughes answered: "**It's not needed to.**" This is the same mortgage on the house that has now been liquidated in this Chapter 7 case. Because those proceeds originated in the Genie scheme and the character of the transfers remains unresolved pending the Ponzi determination, the liquidation of the residence appears premature. The exemption, if any, in the resulting equity should not be treated as finally determined until the source of the mortgage payments is adjudicated.

## III. FALSE OATH AND CONCEALMENT OF ZOOMERAL

**11.** The Debtor's original Statement of Financial Affairs (Doc. 15), which he swore under oath was true and correct, contained no reference whatsoever to Zoomeral. His later amended Statement of Financial Affairs (Doc. 17) added the name "Zoomer al, Inc." solely as a source of modest income (approximately $52,850 in 2024 and $58,275 in 2023). Neither document discloses any debt, loan, or line of credit owed to Zoomeral. On both the original and amended Statements of Financial Affairs the Debtor answered "No" to the questions asking whether he had made any payments on a debt owed to an insider and whether he had made any payments or transfers that benefited an insider. The Debtor has indicated that he dissolved the company and therefore did not schedule it. That explanation does not excuse the omission. Dissolution does not eliminate the obligation to disclose an insider entity that received and then transferred estate-originating funds, nor does it eliminate the debt. The Debtor concealed Zoomeral and the multi-million-dollar insider liability from this Court.

**12.** This concealment constitutes a false oath and a pattern of deception. The Debtor signed both the original and amended Statements of Financial Affairs under penalty of perjury. By first omitting Zoomeral entirely, then disclosing it only as a source of roughly $50,000 per year in income while continuing to conceal the multi-million-dollar insider debt he himself admitted under oath existed and was used for personal mortgage payments, he created a false perception and cover-up of his true financial relationship with the company. Was he lying then, or is he lying now? Either way, the omission of the debt is perjury and concealment. Because of this false oath and concealment, the Debtor cannot now argue that he did not put the debt on his

schedules, that he was not part of the company, or that dissolution somehow wiped the slate clean. Bankruptcy law does not permit a debtor to eliminate an insider debt by simply failing to schedule it and then claiming the company was dissolved. The Genie Trustee's claim already on file in this case (Claim No. 9-1) further confirms the existence of substantial transfers into the insider entity. The Court and the Trustee are also entitled to question how a debtor reporting only approximately $50,000 per year in income can sustain the carrying costs of a residence valued over $700,000 (mortgage, insurance, utilities, taxes, and other living expenses) without a negative cash-flow position, further undermining the credibility of the disclosures he has made under oath.

**13. The Debtor's dissolution of Zoomeral and other insider entities without a proper winding-up also raises serious questions under the Internal Revenue Code. When a shareholder-controlled corporation is dissolved while substantial insider loans to the shareholder remain outstanding and unpaid, the tax law generally requires those amounts to be treated as taxable distributions to the shareholder (constructive dividends or liquidating distributions) rather than as debts that simply disappear. See I.R.C. §§ 61, 301, 316, 331. Dissolution does not eliminate the reporting obligation, nor does it create an automatic bad-debt deduction for the corporation under I.R.C. § 166. The Debtor has neither scheduled the multi-million-dollar insider obligations nor indicated that any income, liquidation, or distribution was reported in connection with the dissolution of these entities. This Court is not being asked to determine tax liability. The pattern of dissolving insider companies, omitting the related debts from sworn bankruptcy schedules, and stating under oath that disclosure was unnecessary is, however, the type of conduct that warrants inquiry by the Internal Revenue Service and further underscores the concealment already present in this case.**

14. The Debtor has repeatedly taken the position that matters arising in the Genie case are purely corporate and therefore have no place in this personal bankruptcy. That position cannot be accepted at face value on the present record. The same entity the Debtor omitted from his sworn schedules in this case—Zoomeral—was the conduit through which substantial funds originating in the Genie scheme were transferred and then used for the Debtor's personal expenses, including mortgage payments on a residence valued in excess of $700,000. The Debtor's own 341 testimony confirms the personal use of those funds and his belief that the resulting obligation did not need to be disclosed here. At the same time, the income he reported on his schedules is approximately $50,000 per year—an amount that cannot support the carrying costs of the lifestyle reflected in the schedules and in the residence that has already been liquidated in this case. The Examiner's Report and the Genie Trustee's claim filed in this Court further establish that the funds moved through insider entities controlled by the Debtor and his partner. The corporate formalities the Debtor now invokes were not respected in practice; they were disregarded when funds were taken for personal use and then discarded through dissolution shortly before this case was filed. The Debtor's actions, together with those of his business partner John-Michael Cohan, have significantly delayed the development of a complete and accurate record in both cases through numerous and often frivolous filings. In the Genie case those filings now approach 800 and have generated well over 10,000 pages; Judge Burgess has set a hearing for November 9 on the issue of those filings and related sanctions. This Court has not permitted a similar proliferation of filings to delay administration here, even though attempts were made. The result is that the sworn disclosures in this case omitted the very conduit that carried scheme proceeds into the Debtor's personal hands and created an incomplete picture of the connection between the two estates. A limited stay will permit the character of those transfers and the accuracy of the Debtor's oath to be determined before claims and assets are finally resolved on the present record.

## IV. RELIEF REQUESTED

**14.** Movant respectfully requests that the Court enter an order: (a) staying substantive administration and claim resolution in this case under 11 U.S.C. § 105(a)—including resolution of the objections to Claim No. 44-1—pending (i) the Genie court's ruling on the Ponzi-scheme and related fraud issues and (ii) completion of the Genie Trustee's tracing of funds through Zoomeral; (b) directing the Trustee to obtain or require a full accounting of all Zoomeral transactions and of the source of the mortgage payments on the residence that has been liquidated; (c) requiring the Debtor to supplement the schedules and Statement of Financial Affairs

to address the Zoomeral relationship and any related debt, or to state under oath why no such disclosure was made; (d) investigating the Debtor's false oath and concealment of Zoomeral, including the omission of any debt or entity from the sworn schedules despite the Debtor's 341 testimony and the Genie Trustee's claim, and making judicial findings that the Debtor concealed Zoomeral and committed a false oath by failing to disclose it; and (e) granting such other and further relief as the Court deems just and proper.

**15.** The fraud allegations, the pending Ponzi determination, the documented movement of funds through an undisclosed insider entity, and the Debtor's concealment of that entity on his sworn schedules mean this matter is not near conclusion. Premature final resolution of claims or assets here, before those determinations and the requested investigation of the false oath are made, would risk inconsistent results and could prejudice creditors of the Genie estate by allowing assets traceable to Genie to be treated as the Debtor's property before the nature of those transfers is determined. Any such premature resolution would be subject to appeal.

**16.** David Choate Hughes II has orchestrated a fraudulent scheme that diverted multi-millions of dollars in contractual and restricted funds from more than fifty people through purported loan transfers that ultimately landed in his own pocket—textbook unjust enrichment. Those transfers have been tracked and traced by the federal examiner (Doc. 146 in the Genie case), who documented substantial insider loans from Genie entities to Zoomeral, Inc. (owned 82.5% by Hughes) totaling well over $1.7 million with little or no repayment, as well as parallel transfers to other insider-controlled companies. The trail has been confirmed by the Chapter 7 Trustee and the Trustee's counsel, and it leads directly to this Court through the Debtor's own lies, concealment, and perjury. The same pattern of concealment and false statements has already resulted in the Debtor being held in contempt of the Florida court for more than a year. He continues that pattern here, under oath, in front of this Court and this Trustee. Movant respectfully asks this Court to grant the relief requested so that the Debtor's own words and actions can no longer shield the scheme he has run.

If, after evaluating the record, the Court determines that the Debtor has committed perjury or a false oath in this case, Movant respectfully requests that the Court take the steps it deems appropriate, which may include sanctions for lying and concealment to this Court and causing unnecessary delay and expense. Movant further requests that the court explore whether any restitutions should be ordered to the estate or creditors for the unnecessary expenses incurred as a result of the Debtor's bad faith conduct.

WHEREFORE, Charles Blake Stringer respectfully requests that the Court grant the relief set forth above.

Dated: October 16, 2026

Respectfully submitted,

Charles Blake Stringer
Pro Se

149 South Shore Dr.
Amarillo, TX 79118
806-676-4888

**CERTIFICATE OF SERVICE**

I certify that on October 17, 2026, I served a true and correct copy of the foregoing Motion by email or first-class mail on the following:

**Robert E. Eggmann III, Chapter 7 Trustee**
Carmody MacDonald P.C.
P.O. Box 168
Columbia, Illinois 62236
reetrustee@carmodymacdonald.com

**Thomas Riske, Counsel for the Chapter 7 Trustee**
Carmody MacDonald P.C.
P.O. Box 168
Columbia, Illinois 62236
reetrustee@carmodymacdonald.com

**Office of the United States Trustee**
USTPRegion10.PE.ECF@usdoj.gov
james.salinas@usdoj.gov

**David Choate Hughes II, Debtor**
2812 Pat Tillman Drive
Springfield, IL 62711
and
3309 Robbins Rd, PMB 160
Springfield, IL 62704

Charles Blake Stringer

docusign

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 57E3247D-5589-8559-83D1-4F5EEABF6232 | | Status: Completed |
| Subject: Motion_for_Limited_Stay_Hughes_Illinois_Numbered final.pdf | | |
| Source Envelope: | | |
| Document Pages: 6 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 1 | Initials: 0 | Blake Stringer |
| AutoNav: Enabled | | theblakestr@gmail.com |
| EnvelopeId Stamping: Disabled | | IP Address: 70.131.25.45 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>10/17/2026 4:47:47 PM | Holder: Blake Stringer<br>theblakestr@gmail.com | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Blake Stringer<br>theblakestr@gmail.com<br>President<br>Stringer Farms Inc. Co Charles Blake Stringer<br>Security Level: Email, Account Authentication (None)<br>**Electronic Record and Signature Disclosure:**<br>Not Offered via Docusign | Signature Adoption: Drawn on Device<br>Using IP Address: 70.131.25.45<br>Signed using mobile | Sent: 10/17/2026 4:47:47 PM<br>Viewed: 10/17/2026 4:47:55 PM<br>Signed: 10/17/2026 4:51:01 PM<br>Freeform Signing |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Theblakestr@gmail.com<br>Theblakestr@gmail.com<br>President<br>Stringer Farms Inc. Co Charles Blake Stringer<br>Security Level: Email, Account Authentication (None)<br>**Electronic Record and Signature Disclosure:**<br>Not Offered via Docusign | COPIED | Sent: 10/17/2026 4:51:02 PM<br>Resent: 10/17/2026 4:51:03 PM<br>Viewed: 10/17/2026 4:51:53 PM |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 10/17/2026 4:47:48 PM |
| Certified Delivered | Security Checked | 10/17/2026 4:47:55 PM |
| Signing Complete | Security Checked | 10/17/2026 4:51:01 PM |
| Completed | Security Checked | 10/17/2026 4:51:02 PM |

| Payment Events | Status | Timestamps |
|---|---|---|