**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

**FILED**
**U.S. Bankruptcy Court**
**Central District of Illinois**
11/6/2026 11:30 AM
**Adrienne D. Atkins, Clerk**

In re:
DAVID CHOATE HUGHES, II,
Debtor.

Case No. 25-70566
Chapter 7

# DEBTOR'S OBJECTION TO TRUSTEE'S MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT OF TRUSTEE'S OBJECTION TO CLAIM NO. 9-1

Objection Deadline: November 23, 2026 (per Doc. 784)
Debtor's Claim Objection Hearing: December 15, 2026, at 9:30 a.m.

David Choate Hughes, II, the debtor in this Chapter 7 case (the "Debtor"), objects to the Trustee's Motion for Order Approving the Compromise and Settlement of Trustee's Objection to Claim No. 9-1 (Doc. 783) (the "Motion to Compromise"), and respectfully states:

## PRELIMINARY SUMMARY

The Trustee asks this Court to approve a compromise that allows a $1.77 million claim against the Debtor based on a corporate judgment against a non-debtor entity, Zoomeral, Inc. The Claim, as filed, pleads no personal cause of action against the Debtor. The Trustee's effort to convert this corporate claim into a personal claim via a Rule 9019 compromise is procedurally improper under Rule 7001, is barred by the two-year statute of limitations under 11 U.S.C. § 546(a)(1), and violates this Court's mandatory duty to rule on the Debtor's pending Objection under 11 U.S.C. § 502(b). The Debtor has standing because the estate holds a calculable surplus if the claim is disallowed, because the Debtor owns the very receivables and indemnity rights that extinguish the claim, and because the Trustee himself previously stated that the claim is not the Debtor's personal debt. The compromise should be denied, and the matter should proceed to the December 15, 2026, hearing on the Debtor's Objection.

**PRELIMINARY STATEMENT**

1. The Trustee's Notice of Motion (Doc. 784) states that if no objection is filed by November 23, 2026, the Court "may enter an Order approving the settlement" upon the terms set forth in the Motion to Compromise. The Notice does not set a hearing on the Motion to Compromise.
2. The Debtor files this Objection before the November 23 deadline. It is timely.
3. The Debtor's Amended Objection to Claim No. 9-1 (Doc. 785) is already pending and is set for hearing on December 15, 2026. The Motion to Compromise asks the Court to allow Claim No. 9-1 "in full" before that hearing occurs.
4. The Debtor opposes any compromise that allows Claim No. 9-1 in any amount. The Debtor's position is not merely procedural. The Claim fails on the merits for three independent reasons:

(a) Contractual immunity. Section 28 of the Loan Agreement requires the Lender (Genie/Cohen) to "indemnify, defend, and hold harmless the Borrower and its respective officers and employees from any liabilities, claims, claw backs, suits, judgments, and damages arising as a result of the performance of the obligations under this Agreement." See Loan Agreement, attached to *Aaron R. Cohen v. Zoomeral, Inc.*, Adv. Pro. No. 3:25-ap-00011-BAJ (Bankr. M.D. Fla.) (Adv. Doc. 1, Exhibit A, pgs. 27-37). The Debtor holds the Section 28 indemnification right by assignment (Doc. 658, Exhibit F) and by abandonment (Doc. 721). The Claim is a "judgment" and a "claw back" within the plain meaning of Section 28. Cohen cannot enforce the Loan Agreement against Zoomeral while refusing to honor the Agreement's indemnity obligation to the Debtor. The Debtor served written demands on Cohen, Elliott, and Fullerton on November 2, 2026 (Doc. 788, §§ 1–5). Those demands asked Cohen to withdraw Claim No. 9-1, correct the 100% ownership statement, and honor Section 28. They have not withdrawn Claim No. 9-1.

(b) Total setoff. Zoomeral earned $1,984,562.00 in receivables from Genie. The Claim is $1,771,555.74. The receivable exceeds the Claim by $213,006.26. Under 11 U.S.C. § 553, the Debtor, as assignee of Zoomeral's rights, holds a valid right of setoff that extinguishes the Claim in full. See Notice of Contractual Offset, Doc. 612 and exhibits. The Trustee has never disputed the amount of these receivables, and this Court formally abandoned them to the Debtor as "inconsequential value" (Doc. 721). The setoff is therefore established on the record and requires no further evidentiary hearing.

5. The Debtor therefore opposes the Motion to Compromise because it asks the Court to allow a $1.77 million claim "in full" on the papers, without adjudicating the Debtor's independent Objection, without giving the Debtor an opportunity to be heard, and without requiring the claimant (Cohen) to produce the evidence that the Trustee claims to have reviewed.

6. While Rule 9019(a) grants the Court discretion to approve a compromise, that discretion is constrained by § 502(b)'s command that once an objection is filed, the Court "shall determine" the claim. 11 U.S.C. § 502(b). That is not a discretionary suggestion; it is a statutory mandate. As Judge Goldblatt recently explained in *In re Yellow Corp.*, No. 23-11069 (CTG) (Bankr. D. Del. Mar. 31, 2025) (Doc. 5999), the Supreme Court's decision in *Truck Insurance* and the Third Circuit's decision in *FTX* "effectively eliminate the so-called majority approach," because the Code's use of the word "shall" is "a word of command ... that normally creates an obligation impervious to judicial discretion," and that "emphasis on the literal statutory words, words that also appear in § 502(b) of the Bankruptcy Code, accord with the approach set out in C.P. Hall and cannot be squared with the more policy focused approach adopted in Kaiser." *Id.* at 23. The Bankruptcy Court for the Northern District of Illinois reached the same conclusion in *In re C.P. Hall Co.*, holding that a trustee "cannot enter into a settlement of the claims that would strip the objector of these rights, effectively settling the objection out from under him." 513 B.R. 540, 545 (Bankr. N.D. Ill. 2014). Approving the compromise on the papers before the December 15 hearing would do precisely that.

**STANDING**

7. The Debtor has standing to object to Claim No. 9-1 on four independent grounds. Each is sufficient on its own. *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607-08 (7th Cir. 1998).

8. First, the Debtor has standing because there is a reasonable possibility of a surplus. *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607-08 (7th Cir. 1998). A Chapter 7 debtor has standing to object to claims where there is a reasonable possibility of a surplus. The Seventh Circuit has defined "party in interest" as "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *In re C.P. Hall Co.*, 513 B.R. 540, 545 (Bankr. N.D. Ill. 2014) (citing *Adair v. Sherman*, 230 F.3d 890, 894 n.3 (7th Cir. 2000)). That interest, however, "must be a pecuniary one." *Id.* (citing *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607-08 (7th Cir. 1998)). The Debtor's pecuniary interest is the surplus set forth in the table below. That interest is direct and calculable, not speculative.

   The estate's net cash on hand is $295,533.31. Doc. 763. Assuming this Court disallows Claim No. 9-1 and the other derivative Florida claims (which the Trustee has also objected to), the estimated maximum possible surplus is calculable as follows:

| Item | Amount | Source |
|---|---|---|
| Net cash on hand | $295,533.31 | Doc. 763 |
| Less: Credit card claims not objected to (Claims 2, 3, 4, 7, 8) | ($32,111.28) | claims register |
| Less: Illinois Dept. of Revenue priority claim (Claim 11) | ($4,396.07) | claims register |
| Less: All Day Lawn Service (Claim 12-1, allowed amount) | ($240.00) | Doc. 548; Doc. 422 |
| Less: Trustee commission under § 326(a), maximum | ($16,901.67) | calculated per 11 U.S.C. § 326(a) |
| Less: Carmody MacDonald fees to date | ($45,000.00) | Doc. 785, Ex. D (incorporated by reference) |
| Less: Special Counsel application | ($19,552.50) | Doc. 761 |
| **Estate Surplus before future fees (minimum)** | **$177,331.79** | calculated |

10. Claim No. 9-1 is not the only derivative business claim in this estate. There are several other claims that, like Claim 9, arise from the Genie bankruptcy proceedings in Florida. Trustee Eggmann has filed objections to each of these derivative claims. The existence of these claims does not eliminate the reasonable possibility of a surplus; to the contrary, it confirms that the claims allowance process must run its course before any compromise forecloses the Debtor's economic stake in the estate. If Claim No. 9-1 and the other derivative Florida claims are disallowed, the maximum surplus calculated above is preserved, and the Debtor's pecuniary interest becomes concrete.

11. Unlike the debtor in *Cult Awareness*, whose surplus depended on a speculative litigation victory, the Debtor's surplus is based on cash already on hand (Doc. 763) and administrative expenses already quantified. *Cult Awareness*, 151 F.3d at 608 (surplus "too remote" where it depended on "a potential judgment" in pending litigation). The Seventh Circuit's concern was remoteness, not the mere existence of a surplus. Here, the surplus is arithmetic.

12. The Trustee's own calculations in the Motion to Compromise confirm that this surplus is not hypothetical, but they also expose a material error in the Trustee's math. In Paragraph 11 of the Motion to Compromise, the Trustee

lists Claim 12-1 (All Day Lawn Service LLC) at $1,320.00 and calculates the total Direct Claims at $37,827.35. However, this Court has already ruled on this claim. On August 12, 2026, the Court entered an Order (Doc. 548) allowing the Trustee's Objection (Doc. 422) "as filed." That Objection expressly stated: "Trustee has no objection to the allowance of the Claim in the amount of $240.00, representing pre-petition charges," and sought to disallow the remaining $1,080.00 in post-petition charges. Therefore, Claim 12-1 is allowed at $240.00, not $1,320.00, and the actual total for the Direct Claims is $36,747.35. The Trustee's miscalculation of $1,080.00 in the very motion he asks this Court to approve demonstrates that the exact dollar amounts in this estate cannot be determined on the papers, and that the claims allowance process must run its course.

13. The Debtor acknowledges that the burden is on him to provide sufficient evidence that disallowance of Claim No. 9-1 will produce a surplus distribution. The table above is based on the Court's own docket: Doc. 763 (net cash), the undisputed claims, and the statutory commission under § 326(a). The figures are not projections; they are arithmetic from the record. The $177,331.79 figure is the ceiling (the estimated maximum surplus), which exists if Claim No. 9-1 and the other derivative claims are disallowed. Conversely, if Claim No. 9-1 is allowed in full, it consumes the entire surplus and leaves the Debtor with nothing. The Debtor's pecuniary interest is therefore not speculative; it is the exact difference between a $177,331.79 surplus and zero.

14. Second, the Debtor has standing because he holds an individual economic interest in the assets underlying Claim No. 9-1. By Assignment dated March 16, 2025 (Doc. 658, Exhibit F), the Zoomeral receivables and the Section 28 indemnity were assigned to Hughes (82.5%) and Cohan (17.5%). By the Order Granting Trustee's Motion to Abandon (Doc. 721, September 11, 2026), this Court determined that the "Zoomeral Offset Claim" and Zoomeral receivables were of "inconsequential value" to the estate and abandoned the estate's interest in them. As a result, those assets reverted to the Debtor as the party holding the assigned interests. The Debtor therefore holds an individual interest in the very assets at issue. As established by this Court's own Order (Doc. 721) and the Assignment (Doc. 658, Ex. F), the

Debtor's interest is direct, not derivative. The Trustee, Aaron Cohen, cannot simultaneously rely on the Loan Agreement to obtain the Judgment against Zoomeral, while disavowing the very indemnity and setoff provisions of that same Agreement when it benefits the Debtor. Having procured the Judgment by default on the Loan Agreement, the Trustee is bound by its terms.

15. Third, the Debtor has standing because the Trustee, Robert Eggmann, himself has taken the position that Claim No. 9-1 is not the Debtor's individual debt. The Trustee's Objection (Doc. 469) states the claim "is not for a debt of this Debtor individually" and "is more properly asserted as an objection to dischargeability." Where the trustee declines to pursue the objection or takes a position that would not undermine administration, the debtor may be heard. *In re Choquette*, 290 B.R. 183, 187 (Bankr. D. Mass. 2003).

16. Fourth, and independently, the Debtor has standing because the Trustee's Motion to Compromise seeks to resolve the Debtor's pending claim objection without a ruling on it. In *In re C.P. Hall Co.*, the court held that a claim objector "is entitled to a ruling on his objection" and that the trustee "cannot enter into a settlement of the claims that would strip him of these rights, effectively settling the objection out from under him." 513 B.R. at 545. That is precisely the situation here. The Debtor electronically filed his Amended Objection (Doc. 785) on October 31, 2026. The hearing is set for December 15, 2026. The Trustee filed the Motion to Compromise on November 2, 2026, asking the Court to allow Claim 9-1 in full before that hearing. If the Court approves the compromise on the papers, the Debtor's objection is mooted without a ruling. *C.P. Hall* forecloses that result.

17. Even if the Court were to find the surplus ground insufficient, which it should not, for the reasons above, the Debtor's standing independently rests on his direct ownership of the 82.5% receivable and Section 28 indemnity by assignment and abandonment (ground two), on the Trustee's own position that Claim No. 9-1 is not the Debtor's individual debt (ground three), and on *C.P. Hall*'s prohibition on settling a pending objection out from under the objector (ground four). The Court need not reach the surplus question to find standing.

18. The Debtor's standing is not diminished by the fact that he is proceeding pro se.

19. Because the Debtor is a party in interest with a direct pecuniary stake in the estate, the Debtor has standing to object to Claim No. 9-1, the Motion to Compromise, and any other claim filed in this bankruptcy case, including the other derivative claims from the Florida bankruptcy proceedings to which the Trustee has filed objections. *In re Cult Awareness Network, Inc.*, 151 F.3d at 607-08; 11 U.S.C. § 502(a).

**ARGUMENT**

**I. The Claim, As Filed, Is Based Only on the Corporate Judgment. It Does Not Plead Veil Piercing, Alter Ego, or Any Personal Fraud Theory**

19. Claim No. 9-1 was filed on November 13, 2025, and signed by Aaron R. Cohen under penalty of perjury. Part 1, item 8 of the Claim states the basis of the claim: "Final Judgment Against Zoomeral, Inc. entered in Adv. No. 3:25-ap-00011-BAJ." Claim 9-1, Part 1, item 8.

20. That is the entire basis stated in Part 1 of the Claim. There is no veil-piercing theory pleaded. There is no alter-ego theory pleaded. There is no personal fraudulent transfer cause of action pleaded against Hughes. The Claim is, on its face, a claim based on a corporate judgment against Zoomeral, and nothing more than that.

21. The Addendum to the Proof of Claim states that Zoomeral's bank records "showed numerous transfers to the Debtor and transfers to pay personal expenses of the Debtor in an amount that exceeds the amount of the Judgment against Zoomeral." Claim 9 Exhibit, p. 1. But the Addendum does not plead veil piercing, does not plead alter ego, and does not plead a personal fraudulent transfer cause of action. It merely states that the Trustee "believes" that "these transfers to the Debtor from Zoomeral are, or may be, fraudulent transfers pursuant to Fla. Stat. § 726.105." Id. A belief is not a pleaded claim. A reservation of rights is not a cause of action. And Eggmann's Motion to Compromise repeats the same "belief" language; it does not identify any pleaded personal cause of action either. Motion to Compromise, ¶¶ 15–16.

22. The Claim, as filed, is limited to the Florida Judgment against Zoomeral. That is the only basis stated. The Trustee cannot now, through a Motion to Compromise, allow the Claim in full based on a different theory that was never pleaded.

## II. The Trustee's Own Objection Said the Claim Is Not a Personal Debt of the Debtor. The Trustee Cannot Now Allow It in Full Based on an Unseen Belief

23. On July 15, 2026, the Trustee filed his Objection to Claim No. 9-1 (Doc. 469). The Trustee's Objection requested that the Cohen Claim be disallowed for the reason that "the claim was not for an individual debt of Debtor, but rather that of a business entity, Zoomeral, Inc." *Doc. 469, p. 1.*

24. The Trustee has now reversed his position. The Motion to Compromise states that "upon consideration of the evidence provided to Trustee Eggmann by Trustee Cohen," the Trustee "believes that Trustee Cohen has a valid fraudulent transfer claim." Motion to Compromise, ¶ 18. But this "evidence" is not before this Court. It has not been filed, authenticated, or subjected to cross-examination. More importantly, the existence or quality of that evidence is irrelevant to the legal question presented: whether Claim No. 9-1, as filed, pleads a personal cause of action against Hughes. It does not.

25. That is not evidence. The threshold issue presented by Claim No. 9-1 is a pure question of law that requires no discovery and no evidentiary hearing: whether the Claim, as filed, pleads a personal cause of action against Hughes. The Claim itself, on its face, asserts a corporate judgment against Zoomeral, Inc., not a personal debt of Hughes. The Debtor has not seen the "evidence" the Trustee references, has not had an opportunity to cross-examine it, and has not had an opportunity to rebut it. But the Debtor does not need to. A Rule 9019 motion is not a vehicle for the Trustee to allow a $1.77 million claim based on documents that have never been filed, authenticated, or subjected to cross-examination in this Court.

26. The burden of proof is on Cohen, the claimant. Cohen has produced no evidence in this Court beyond what he privately showed to the Trustee. The Trustee's opinion that Cohen "believes" he has a valid claim is not admissible evidence and does not satisfy the claimant's burden. A claim

cannot be allowed on the Trustee's say-so. It must be allowed on the record, after notice and an opportunity to be heard, under 11 U.S.C. § 502(b).

## III. Fullerton's 100% Ownership Claim Was False and Has Now Been Abandoned. Veil Piercing Was Never Pleaded or Adjudicated and Cannot Be Asserted Now

27. On August 11, 2026, Fullerton filed a Response to the Trustee's Objection (Doc. 541). At paragraph 3, Fullerton asserted: "Hughes was also the 100% owner of a company called Zoomeral, Inc. ('Zoomeral')." Doc. 541, ¶ 3.

28. That statement was false. The Examiner's Report (In re Genie Investments NV, Inc., Case No. 3:24-bk-00496-BAJ, Doc. 146, ¶ 114, p. 32) states: "Hughes owns 82.5% and Cohan owns 17.5%." The Assignment Package (Doc. 658, Exhibit F, pp. 4, 7, 19) confirms the same split. Cohen's own testimony confirms the point. At Adv. Doc. 70, p. 41, lines 19-23, Cohen testified: "I relied primarily on the Yip report." The Yip report states the 82.5%/17.5% split. Doc. 146, ¶ 114, p. 32.

29. On November 2, 2026, Fullerton filed an Amended Response to the Trustee's Objection (Doc. 786). At paragraph 3, Fullerton corrected the record: "Hughes owned an 82.5% interest in a company called Zoomeral, Inc. ('Zoomeral'). The remaining 17.5% of Zoomeral was owned by John Michael Cohan." Doc. 786, ¶ 3. That correction came only after the Debtor served his Demands (Doc. 788) on November 2, 2026. The 100% figure stood unchallenged for nearly three months, from August 11 to November 2, 2026.

30. Fullerton's concession is binding on Cohen and it forecloses the argument that the Trustee's newly adopted veil-piercing theory can survive. Fullerton originally asserted that the Debtor was the "100% owner" of Zoomeral. Doc. 541, ¶ 3. That factual predicate was the entire basis on which any personal liability theory could rest, because if the Debtor owned 100% of Zoomeral, the Trustee could argue "complete domination and control" under Wallace ex rel. Cencom Cable Assocs. II, L.P. v. Wood, 752 A.2d 1175, 1184 (Del. Ch. 1999). Fullerton has now abandoned that predicate. He concedes that "Hughes owned an 82.5% interest in a company called Zoomeral, Inc." and

that "the remaining 17.5% of Zoomeral was owned by John Michael Cohan." Doc. 786, ¶ 3. The Trustee cannot now argue in the alternative that 82.5% still constitutes "complete domination and control" when the original pleading relied entirely on the 100% figure, and when the remaining 17.5% belongs to a third party. A party cannot amend its theory of liability in a settlement motion to save a claim that was pleaded on a different, and now admitted false, factual premise. Regardless, the threshold problem remains: veil piercing was never pleaded in Claim No. 9-1, and it cannot be injected now through a Rule 9019 compromise.

31. Veil piercing was never pleaded in the Claim. It was never pleaded in the Florida adversary. It was never adjudicated. The Florida Judgment (Adv. Pro. No. 3:25-ap-00011-BAJ, Doc. 42) was entered against Zoomeral, not Hughes. It contains no alter-ego finding, no finding of domination, and no judgment against Hughes. A default judgment against a corporation does not establish personal liability against a non-party individual. Because veil piercing was never pleaded, it cannot now be shifted into the claim through a compromise motion. A claim objection is not a vehicle for amending a proof of claim to assert new theories. Fed. R. Bankr. P. 7015. The proper mechanism for asserting a new claim is an amended proof of claim, not an objection proceeding. The bootstrap problem is procedural as well as substantive. Claim No. 9-1 asserts a corporate judgment. A veil-piercing theory against Hughes individually is a different claim, requiring different elements, different evidence, and a different defendant. It cannot be adjudicated through an objection to Claim No. 9-1. If Cohen wishes to assert it, he must file an adversary proceeding against Hughes personally. Fed. R. Bankr. P. 7001(1) and (i) require an adversary proceeding to recover money or property and to obtain a declaratory judgment related to such a proceeding. A contested matter under Rule 9014 is not a substitute.

32. Furthermore, the time for Cohen to file an adversary proceeding against the Debtor personally for fraudulent transfer has expired. Under 11 U.S.C. § 546(a)(1), a trustee must commence an avoidance action within two years after the appointment of the trustee. The United States Bankruptcy Court for the Middle District of Florida entered its Order Converting Case from Chapter 11 to Chapter 7 in *In re Genie Investments NV Inc.*, Case No. 3:24-

bk-00496-BAJ (Doc. 207), on August 12, 2024, and appointed Aaron R. Cohen as the Chapter 7 Trustee. The two-year limitations period expired in August 2026.

33. Cohen cannot use a Rule 9019 motion to compromise a corporate claim as a backdoor way to impose personal liability for a fraudulent transfer that is now time-barred. If Cohen wished to assert that the $2.8 million in alleged transfers from Zoomeral to the Debtor constituted a personal fraudulent transfer, he was required to file an adversary proceeding against the Debtor in this Court under Fed. R. Bankr. P. 7001(1) prior to August 2026. He did not do so. His attempt to now assert this time-barred theory through the Trustee's Motion to Compromise (Doc. 783) and the Trustee's newly found "belief" (Doc. 783, ¶ 18) is procedurally improper. The Trustee has had access to Zoomeral's bank records since at least 2025; there is no basis for equitable tolling of the statute of limitations.

34. Cohen had every tool available to assert a personal claim against Hughes and chose not to use any of them. He could have named Hughes as a defendant in the Florida adversary proceeding before the default judgment was entered. He did not. He could have filed a separate adversary proceeding against Hughes in this Court under Rule 7001 before August 2026. He did not. He could have sought relief from the automatic stay or asked this Court for permission to proceed against Hughes in Florida. He did not. He could have filed an amended proof of claim setting forth a personal fraudulent transfer cause of action with the particularity required by Rule 3001. He did not. Instead, he did nothing for more than a year, and now asks this Court to allow a $1.77 million personal claim against the Debtor through a Rule 9019 compromise motion filed by a different trustee. That is not a compromise. It is an end-run around the adversary proceeding requirement, the pleading requirements, and the statute of limitations.

## IV. The Genie Trustee's New $2.8 Million Fraud Claim Is Not the Basis of Claim 9-1 and Cannot Be Asserted Through the Pending Objection Proceeding

35. Fullerton's own filing defeats the factual premise of any veil-piercing theory. The 100% ownership figure was the predicate for personal liability.

Fullerton has now conceded that the Debtor owns 82.5% of Zoomeral, with Cohan owning the remaining 17.5%. Doc. 786, ¶ 3. That concession is binding on Cohen and categorically defeats any claim of complete domination and control as a matter of law. But the more fundamental problem is that no veil-piercing theory was ever pleaded in the Claim at all. The only basis stated in Claim No. 9-1 is the corporate judgment against Zoomeral. The Claim must be disallowed for that reason alone, and the concession simply confirms that there is no factual fallback. The Debtor does not accuse any party of intentional misconduct. The Debtor respectfully requests that the Court review the filings for compliance with Fed. R. Bankr. P. 9011, consistent with the Debtor's separately filed objection.

36. Fullerton's Response (Doc. 541, ¶ 7) and Amended Response (Doc. 786, ¶ 7) assert that 'from September 2022 to December 2024 over $2.8 million was transferred from Zoomeral to Hughes' personal investment accounts or spent by Hughes on personal expenses.' That allegation is not the basis of Claim No. 9-1. The Claim is based on the Final Default Judgment against Zoomeral. Claim 9-1, Part 1, item 8. It is not based on any personal transfer from Zoomeral to Hughes.

37. If Cohen wishes to pursue a personal fraudulent transfer claim against Hughes, he must file an adversary proceeding against Hughes personally. The Addendum to Claim 9-1 states only that Cohen "believes" the transfers "are, or may be, fraudulent transfers." Claim 9 Exhibit, p. 1. A belief is not a pleaded cause of action, and it is not a request for relief. To actually recover money from Hughes personally on a fraudulent transfer theory, Cohen was required to file an adversary proceeding under Fed. R. Bankr. P. 7001(1), which expressly governs "a proceeding to recover money or property." He did not do so. He cannot use the Debtor's pending Objection (Doc. 785), which is set for hearing on December 15, 2026, to assert a personal fraud claim that was never pleaded, never adjudicated, and never part of the claim as filed. A claim objection cannot substitute for an adversary proceeding against the individual.

**V. The Denial of Discharge Does Not Convert a Corporate Debt into a Personal Debt**

38. Fullerton argues that because the Debtor was denied a discharge, Cohen "should be allowed to receive a distribution in this case as an unsecured creditor." Doc. 786, ¶ 9.

39. That argument confuses the dischargeability of a debt with the existence of a debt. The denial of discharge means that the Debtor's personal debts are not discharged. It does not mean that a corporate debt becomes the Debtor's personal debt. The question is not whether Claim No. 9-1 is dischargeable. The question is whether it is the Debtor's debt at all. Cohen has not established that it is. The denial of discharge therefore has no bearing on whether Claim No. 9-1 should be allowed against the Debtor. And the further question cannot be fairly determined until after indemnification and offset are adjudicated.

## VI. The Timeline Shows That Cohen's New Theories Were Asserted Only After the Debtor Served His Demands

40. The Claim was filed on November 13, 2025. Part 1, item 8 states the basis: "Final Judgment Against Zoomeral, Inc. entered in Adv. No. 3:25-ap-00011-BAJ." No veil piercing. No personal fraud. No 100% ownership claim.

41. On July 15, 2026, the Trustee filed his Objection (Doc. 469). He said the Claim "is not for a debt of this Debtor individually" and is "more properly asserted as an objection to dischargeability."

42. On August 11, 2026, Fullerton filed his Response (Doc. 541). He asserted, for the first time, that the Debtor was the "100% owner" of Zoomeral (Doc. 541, ¶ 3) and that over $2.8 million was fraudulently transferred to the Debtor (Doc. 541, ¶ 7). Neither theory appears in the Claim.

43. On September 11, 2026, this Court entered the Abandonment Order (Doc. 721). The Order abandoned the "Zoomeral Offset Claim" and the Zoomeral receivables to the Debtor. The Order found that the property was "of inconsequential value and benefit to the bankruptcy estate."

44. On November 2, 2026, the Debtor served his Demands (Doc. 788) on Cohen, Elliott, and Fullerton. The Demands asked Cohen to withdraw Claim 9-1, correct the 100% ownership statement, and honor Section 28. The Demands

also referenced Claim 72-2 in the Florida bankruptcy, which relates to the same corporate structure.

45. The Genie Trustee's own filings on November 2, 2026, confirm the concession. In the Florida case, Cohen's Objection to Claim 72-2 states: "Hughes then states that he owns 82.5% of Zoomeral (Claim 72-2, Part 7, ¶ 12)." In re Genie Investments NV, Inc., Case No. 3:24-bk-00496-BAJ, Doc. 777, ¶ 7, p. 2. In this case, on the same day the Debtor served his Demands, the Genie Trustee filed an Amended Response correcting the ownership figure to 82.5%. Doc. 786, ¶ 3. Neither filing disputes the 82.5% figure. The Genie Trustee has therefore conceded, on the record of both bankruptcy cases, that the Debtor owns 82.5% of Zoomeral, not 100%. That concession is binding, and it defeats the factual predicate for any veil-piercing theory.

46. On November 2, 2026, the same day the Demands were served, Fullerton filed his Amended Response (Doc. 786). He corrected the ownership figure to 82.5% (Doc. 786, ¶ 3). He abandoned the 100% predicate for veil piercing. That admission is binding on Cohen. Fed. R. Civ. P. 8(b)(1)(A) (admissions in responsive pleadings binding).

47. On November 2, 2026, the same day, Eggmann filed the Motion to Compromise (Doc. 783). He stated that he now "believes" Cohen has a valid fraudulent transfer claim (Doc. 783, ¶ 18), reversing his position stated in his July 15 Objection.

48. The sequence is clear. The 100% ownership claim was false and has been abandoned. The $2.8 million fraud theory was never pleaded in the Claim. The Trustee's "belief" that the Claim is valid arose only after the Debtor served his Demands. These are not the bases on which the Claim was filed. The Claim remains what it always was: a claim based on a corporate judgment against Zoomeral. It is limited to that corporate judgment, and nothing more.

## VII. The Debtor's Defenses Are Substantial and Are Already Set for Hearing

49. The Debtor's Amended Objection (Doc. 785) sets forth the following defenses, each of which is incorporated herein by reference:

(a) The Loan Agreement's Section 28 indemnification obligation bars the Claim. The Lender (Genie/Cohen) is required to "indemnify, defend, and hold harmless the Borrower and its respective officers and employees from any liabilities, claims, claw backs, suits, judgments, and damages arising as a result of the performance of the obligations under this Agreement." See Loan Agreement, Adv. Doc. 1, Exhibit A, pgs. 27-37.

(b) The contractual offset ($1,984,562.00) exceeds the Claim ($1,771,555.74) and extinguishes it. See Notice of Contractual Offset, Doc. 612. The amount is a matter of record and requires no further evidentiary hearing to establish mutuality.

(c) The Loan Agreement is non-recourse and contains no personal guarantee. Loan Agreement, §§ 24, 25. The signature page (Adv. Doc. 1, Ex. A, p. 35) confirms that Hughes signed "on behalf of ZOOMERAL, Inc." There is no individual signature by Hughes and no personal guarantee.

(d) The Claim was obtained in violation of the Sole Remedy Provision and the Arbitration Clause. Loan Agreement, §§ 7, 31.

(e) Cohen's own Amended Response (Doc. 786, ¶ 3) admits the Debtor owns 82.5% of Zoomeral, not 100%, which defeats the veil-piercing theory.

50. These defenses are substantial. They are already set for hearing on December 15, 2026. They cannot be swept aside by an order entered on the papers before that hearing. The defenses are dispositive on the face of the documents. No personal guarantee exists. The Loan Agreement is non-recourse. The judgment is against Zoomeral, not Hughes.

**VIII. The Court Should Not Approve the Compromise on the Papers Because the Debtor Has a Pending Claim Objection That § 502(b) Requires the Court to Determine**

51. Under 11 U.S.C. § 502(a), a filed claim is deemed allowed unless a party in interest objects. Once an objection is filed, § 502(b) provides that the court "shall determine" the amount of the claim. The word "shall" is mandatory.

52. The Debtor has objected. The Court has a statutory obligation to determine that objection. The Trustee cannot use a Rule 9019 settlement, entered on the

papers without a hearing, to bypass the contested matter the Debtor has already filed and which is already set for hearing on December 15, 2026.

53. The leading case on this exact issue is In re C.P. Hall Co., 513 B.R. 540 (Bankr. N.D. Ill. 2014). In that case, the Chapter 7 trustee filed a Rule 9019 motion to settle certain claims while a creditor's objection to a claim was still pending. The court held that the objector "is entitled to a ruling on his objection" and that the trustee "cannot enter into a settlement of the claims that would strip him of these rights, effectively settling the objection out from under him." Id. at 545.

54. That is precisely what the Trustee is attempting here. If the Court approves the Motion to Compromise on the papers before, or after November 23, the Debtor's Objection, which is set for hearing on December 15, will be mooted. The Debtor will have been denied the hearing the Court has already scheduled. That result would be inconsistent with the Trustee's duty of candor and with the command of § 502(b) that the Court "shall determine" the claim after objection.

55. The Court should therefore decline to approve the Motion to Compromise on the papers. It should defer ruling until the Debtor's Amended Objection is adjudicated at the December 15, 2026, hearing.

## IX. Deferral Will Not Prejudice the Trustee, Cohen, or the Estate

56. Deferral will not prejudice the Trustee. The Direct Claims (the undisputed unsecured claims) can be paid without resolving the Cohen Claim. The Trustee can distribute to the Direct Claimants while the Cohen Claim is being adjudicated.

57. Deferral will not prejudice Cohen. Cohen will have his day in court on his Claim at the December 15, 2026, hearing. He will have the opportunity to produce his evidence and meet his burden. If his Claim is valid, he will be allowed. If it is not, he will be disallowed.

58. Deferral will not prejudice the estate. The estate has a surplus. The Direct Claims can be paid. The Cohen Claim can be reserved. The Trustee can close the estate after the Claim is resolved.

## X. The Debtor's Objection Is Not a Delay Tactic

59. The Debtor e-filed and emailed service of his Amended Objection on October 31, 2026. The Motion to Compromise was filed on November 2, 2026. The hearing is set for December 15, 2026. The Debtor has acted promptly and is prepared to proceed at the scheduled hearing.

60. The Debtor is not asking for an indefinite delay. He is asking the Court to follow the schedule it has already set: hear the Objection on December 15, 2026, and defer ruling on the compromise until then.

**RESERVATION OF RIGHTS**

61. The Debtor reserves all rights to supplement this Objection, to submit additional exhibits, to file a reply, to seek sanctions under Rule 9011, and to respond to any further arguments the Trustee or Cohen may raise.

62. Nothing in this Objection constitutes a waiver of any argument, defense, or right available to the Debtor, including the right to object to the Motion to Compromise on any additional ground that may arise, the right to pursue the adversary proceedings referenced in the Debtor's prior filings, and the right to seek enforcement of the Section 28 indemnification obligation in the appropriate forum.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court:

A. Decline to approve the Motion to Compromise (Doc. 783) on the papers;

B. Defer ruling on the Motion to Compromise until the Debtor's Amended Objection to Claim No. 9-1 (Doc. 785) is adjudicated at the December 15, 2026, hearing;

C. Stay any order approving the Motion to Compromise until the Debtor's Amended Objection to Claim No. 9-1 (Doc. 785) is adjudicated at the December 15, 2026, hearing, pursuant to 11 U.S.C. § 105(a) and In re C.P. Hall Co., 513 B.R. 540 (Bankr. N.D. Ill. 2014);

D. In the alternative, if the Court is inclined to approve the compromise, set the Motion to Compromise for hearing pursuant to Fed. R. Bankr. P. 9019(a), so that the Debtor may be heard on his Objection before the compromise is approved; and

E. Grant such other relief as the Court considers just and proper.

Dated: November 6, 2026

Respectfully submitted,

/s/ David Choate Hughes, II
DAVID CHOATE HUGHES, II
82 Plantation Pointe Road, No. 281
Fairhope, Alabama 36532
davidchoatehughes@gmail.com
Debtor, Pro Se

## CERTIFICATE OF SERVICE

I certify that on November 6th, 2026, I served a true and correct copy of **DEBTOR'S OBJECTION TO TRUSTEE'S MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT OF TRUSTEE'S OBJECTION TO CLAIM NO. 9-1** electronically through the Court's CM/ECF system upon all parties registered to receive electronic notice and by email at the following addresses:

Allison Walsh, on behalf of IH Mississippi Valley Credit Union:
aew@brookslawfirmpc.com

Dana N. O'Brien, on behalf of LendSure Mortgage Corp.:
dana.obrien@mccalla.com; mccallaecf@ecf.courtdrive.com

Kinnera Bhoopal, on behalf of LendSure Mortgage Corp.:
kinnera.bhoopal@mccalla.com; mccallaecf@ecf.courtdrive.com

Thomas H. Wilson, on behalf of MIMS-IPR LLC and Mitchell Mims:
thw@heplerbroom.com

Gregory D. Latham, on behalf of Michelle Seiler Tucker:
glatham@iplawconsulting.com

United States Trustee:
USTPRegion10.PE.ECF@usdoj.gov; james.salina@usdoj.gov

Thomas Bushnell Fullerton, on behalf of Aaron R. Cohen, Chapter 7 Trustee of the bankruptcy estate of Genie Investments NV, Inc.:
thomas.fullerton@akerman.com

Robert E. Eggmann, Chapter 7 Trustee:
ree@carmodymacdonald.com

Thomas H. Riske, counsel for Robert E. Eggmann, Chapter 7 Trustee:
thr@carmodymacdonald.com

The undersigned hereby certifies that a true and correct copy of the foregoing was served by mail upon interested parties and all creditors in the above-captioned cause by enclosing the same in an envelope addressed to each party at the addresses disclosed by the pleadings of record, by U.S. Mail with postage fully prepaid, on this 6th day of November 2026 as follows:

David Choate Hughes II
3309 Robbins Rd PMB 160
Springfield, IL 62704

David Hughes ll
1409 E Dove Pl
Casa Grande AZ 85122

New Mount Olive Church
Ferlander Lewis, Pastor
2905 Macfarlane Crescent
Flossmoor, IL 60422-2905

20Twenty Development LLC
494 N Emery Ave
Orem, UT 84057

Eastern Account System of Connecticut, Inc.
3 Corporate Drive, Ste 2
Danbury, CT 06810

North Haven Lodging Partners
Benjamin J. Morris
c/o Foley & Lardner
11988 El Camino Real, Ste 400
San Diego, CA 92130

A Complete Home Inspection
110 Velsco Lane
Port Sulphur, LA 70083

Faith Investors Services LLC
1522 4th Ave
Asbury Park, NJ 07712

Nortical Capital Inc
921 E. Parker Street 1
Lakeland, FL 33801

Aaron R Cohen in his capacity
as Chapter 7 Trustee
c/o Raye C. Elliott, Esq.
Akerman LLP
401 E Jackson St, Ste 1700
Tampa, FL 33602

Acres & Royalty LLC
P.O. Box 1087
Ruston, LA 71273-1087

Alere LLC
1530 E. Williams Field Rd 201
Gilbert, AZ 85295

All Day Lawn Service LLC
3900 Rochester Rd
Springfield, IL 62712-9125

Ally
PO Box 9222
Old Bethpage, New York 11804

Ally Bank
Resurgent Capital Services
PO Box 10368
Greenville, SC 29603-0368

ALV Capital LLC
c/o Strauss Law Group PLLC
264 South River Road, Box 552
Bedford, NH 03110

American Express Natl Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

AMRODDO Holdings, LLC
625 Woodmont Ave
Berkeley, CA 94708

Another Chance Group Home
54 N Vista Ave
Casa Grande, AZ 85122

Foster Group LLC
322 E 2600 N
Lehi, UT 84043

Garrett Chase Buxton
PO Box 1087
Ruston, LA 71273-1087

Global Verse Holdings LLC
1709 Vintage Lane
Wylie, TX 75098

Goldman Sachs Bank
Lockbox 6112
PO Box 7247
Philadelphia, PA 19170-6112

Heliosun LLC DBA Odin
1600 S Litchfield Rd 230A
Goodyear, AZ 85338

Heliosun, LLC
17792 W Valentine St
Surprise, AZ 85388

Hospitality Growth Capital LLC
264 South River Road, Box 552
Bedford, NH 03110

IH Mississippi Valley CU
2500 River Dr
Moline, IL 61265

IHMVCU
PO Box 1010
Moline, IL 61266

Illinois Department of Revenue
Bankruptcy Section,
PO Box 19035
Springfield, IL 62794-9035

Nutre Leasing LLC
264 South River Road, Box 552
River Road, Bedford, NH 03110

Onsite Lifecare Inc
23 Dora Lane
Holmdel, NJ 07733

Onslow Bay Financial LLC
PO Box 65250
Salt Lake City, UT 84165-0250

Pacer Service Center
P.O. Box 5208
Portland, OR 97208-5208

Quantum3 Group for Mercury
FinancialFirst Bank & Trust
PO Box 788
Kirkland, WA 98083-0788

Relco Industries LLC
Richard L Ellison
75 Lambert Avenue
Clifton, NJ 07013

Rolling By The Dozen RV Park
40 Country Road 267
Somerville, TX 77879

Rolling by the Dozen RV Park
PO Box 184
Snook, TX 77878

Rowehl & Russo Properties
237 Floyd Rd
Shirley, NY 11967

S&L Zeppeteli dba SLZ Waste
191 Moonachie Road
Moonachie, NJ 07074

Anvil Construction Inc.
470 N Main St
Brigham City, UT 84302

Archer Capital Investments
Michael Thompson
1448 W. Salmon Caddis Dr.
Bluffdale, UT 84065

Autonomous Drone Solutions
2121 Brittmoore 2200
Houston, TX 77043

Belle Maison Realty, LLC
Attn: Lea Muse
1133 E 83rd Street 171
Chicago, IL 60619

Bild Credit LLC
30 N Gould Street 30212
Sheridan, WY 82801

Braces at Brick, PA
Dr John Young
900 Cedar Bridge Ave Ste B15
Brick, NJ 08723

Brian Bevan
282 East 300 South
Smithfield, UT 84335-1636

Brooklyn Heights
307 N Lincoln Street
Tallulah, LA 71282

Brooklyn Heights LLC
701 N Chestnut St
Tallulah, LA 71282

Bull & Bear Properties LLC
1140 E 87th Street
Chicago, IL 60619

Internal Revenue Service
P.O. Box 7346
Philadelphia PA 19101-7346

Jennifer R. Dowd
57 Country Place
Springfield, IL 62703

Knut LLC
697 N 740 E
Lehi UT 84043

Latent Wealth Group, LLC
302 N. Abajo Peak Way
Heber City, UT 84032

Lea Muse
1133 E 83rd St.
Chicago, IL 60619

Legacy Land Developers LLC
1651 W 100th St
Chicago, IL 60643-2128

LendSure Mortgage Corp.
Legal Department
12230 World Trade Drive #250
San Diego, CA 92128

Limitless Investment Group
3855 South 500 West Unit B
Salt Lake City, UT 84115

Log Cabin Building LLC
289 Parker Drive
Pittsburgh, PA 15216

Meetopolis LLC
Attn: Lisa Butkiewicz
5434 E Kathleen Road
Scottsdale, AZ 85254

Seiler Tucker Inc.
400 Poydras Street, Ste. 1460
New Orleans, LA 70130

Solace Realty Concepts LLC
112 Lehigh Ave
Newark, NJ 07112

Solar Capital Funding LLC
c/o Strauss Law Group PLLC
264 South River Road, Box 552
Bedford NH 03110

Springer Farms Landholdings
325 N 1200 E
American Fork, UT 84003

Sun Coast Entertainment Live
6960 Brescia Way
Orlando, FL 32819

Sunlight Storage LLC
(Doug Daniels)
3344 Bear Canyon Ln
Cedar Hills, UT 84062

Temidayo Adebayo
148 Undercliff Avenue Suite 9
Edgewater, NJ 07020

The Farming Co Pty Ltd
86 Lakeside Drive
Helena Valley
6056, Western Australia

The Generations Group
Don Strickland
14312 Zion Gate Xing
Conroe, TX 77384-2516

TnC NOLA Holdings LLC
1461 Annunciaction Street B
New Orleans, LA 70130

Business Live Global USA LLC
4538 Walnut Ridge Circle
McDonald, PA 15057

Cavalry SPV I, LLC
for Citibank, N.A.
PO Box 4252
Greenwich, CT 06831

Charles Blake Stringer
Nutra-Acres LLC
149 South Shore Drive
Amarillo, TX 79118

Cobb Utilities Inc.
191 Honeysuckle Circle NE
Ranger, GA 54235

Cool Beanz, LLC
143 West Fulton Street
Sanford, FL 32771-143

Credit One Bank
PO Box 98873
Las Vegas, NV 89193-8873

Dajo Properties LLC
11360Chestnut Tree Rd
Honey Brook, PA 19344

Mercury Card Services
PO Box84064
Columbus, GA 31908

Michael Calvitto,
H&M Essential Services LLC
15714 Torry Pines Rd.
Houston, TX 77062-4512

Michael Thompson
1448 W Salmon Caddis Dr
Bluffdale, UT 85065

Mitchell Mims
1627 7th St S
Clanton, AL 35045

Moser Holdings, LLC
537 S. 150 E.
Smithfield, UT 84335

N2N Group, Inc
5 Webb Hill Road
Great Neck, NY 11020

Navy Federal
PO Box 3000
Merrifield, VA 22119-3000

TruGreen
1790 Kirby Pkwy Ste 300
Memphis, TN 38138

Uncle Willie Green Wings
141 Lehigh Ave
Newark, NJ 07112

WAI Holdings, LLC
1275 S Lucerne Blvd
Los Angeles, California 90019

Wallingford Lodging Partners
Benjamin J. Morris
c/o Foley & Lardner
11988 El Camino Real Ste 400
San Diego, CA 92130

Wells Fargo Bank, N.A.
Wells Fargo Card Services
PO Box 10438
MAC F8235-02F
Des Moines, IA 50306-0438

Wells Fargo Card Services
PO Box 9187
Minneapolis, MN 55480-9920

West Palm Holdings Inc
2705 Via Vistosa
San Clemente, CA 92672

Darnell Development
1118 N Chinowth
Visalia, CA 93291-2814

NCR Digital Corp
237 Floyd Road
Shirley, NY 11967

Zelco Properties LLC
108 Patriot Dr A
Middletown, DE 19709

Darnell Development LLC
2920 W Main St
Visalia, CA 93291

20Twenty Development, LLC
Bryan Olson
11980 S 1300 W
Riverton, UT 84065

Ayo Agbejimi
112 Lehigh Avenue
Newark, NJ 07112

Another Chance Group Home
c/o Skylar Whitfield
4186 S Spring Dr.
Chandler, AZ 85249

John Michael Cohan
PO Box 6693
Jacksonville, FL 32236

Doug Daniels
c/o Sublight Storage LLC
3344 Bear Canyon LN
Cedar Hills, UT 84062

H&M Essential Services
Michael Calvitto
12103 Floramorgan Lane
Houston, TX 77089

Deborah Lee
c/o Business Live Global USA
4538 Walnut Ridge Circle
McDonald, PA 15057

Lourndy St. Louis
1522 4th Ave
Asbury Park, NJ 07712

Meetoplois LLC
Attn Lisa Butkiewicz
6501 E Greenway Pkwy
#103-218
Scottsdale, AZ 85254

OnSite LifeCare Inc
41 Flatbush Avenue Suite 233
Brooklyn, NY 11217

TnC Nola Holdings LLC
Christopher J Lovett
7718 Benjamin St
New Orleans, LA 70118

/s/ David Choate Hughes II